**Dennis L. STEPHENS, Petitioner–Appellant,**

v.

**Robert G. BORG, Warden, Respondent–Appellee.**

No. 93–15711.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 11, 1995.

Decided July 11, 1995.

---

Eric S. Multhaup, San Francisco, CA, for petitioner-appellant.

Laurence K. Sullivan, Deputy Atty. Gen., San Francisco, CA, for respondent-appellee.

Before: ALDISERT,* GOODWIN, and SCHROEDER, Circuit Judges.

Opinion by Judge SCHROEDER; Dissent by Judge ALDISERT.

SCHROEDER, Circuit Judge:

■ Dennis Lee Stephens appeals the district court's denial of a writ of habeas corpus challenging his California state court convictions for first degree murder with use of a deadly weapon, Cal.Penal Code §§ 187, 12022(b), and assault with a deadly weapon, Cal.Penal Code §§ 245, 1181.6. He was sentenced to state prison for 31 years to life. In this 28 U.S.C. § 2254 petition, he contends that his Sixth Amendment rights were violated when the state successfully requested a felony-murder instruction. He argues that the prosecution's conduct in the proceedings misled him into believing that the state would not ask for a felony-murder instruction. The district court granted the appellee summary judgment. We review de novo a district court's denial of a petition for a writ of habeas corpus, *see Harris v. Vasquez,* 949

---

* Honorable Ruggero J. Aldisert, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

F.2d 1497, 1510 (9th Cir.1990), *cert. denied,* 503 U.S. 910, 112 S.Ct. 1275, 117 L.Ed.2d 501 (1992), and we affirm.

The crimes occurred on February 25, 1985 in a market in Pittsburg, California. Stephens took a package of meat, hid it under his jacket and started to leave the store without paying. One of the market proprietors espied Stephens' activities and attempted to detain him. Stephens drew out a large hunting knife. During the ensuing struggle, he stabbed the victim three times, killing him. He proceeded to stab and wound the slain man's brother, who had attempted to disarm Stephens after he had stabbed the first victim. Stephens' father-in-law, also armed with a knife, and his wife came to his aid, joining in the fracas. Stephens fled the scene and was later apprehended in Oklahoma.

The original information charged petitioner with petty theft with a prior conviction of theft, Cal.Penal Code §§ 484, 666, murder, Cal.Penal Code § 187, and attempted murder, Cal.Penal Code §§ 187, 664. Use of a deadly or dangerous weapon, to wit, a knife, was charged in the attempted murder and murder counts. *See* Cal.Penal Code § 12022(b). He pled guilty to the petty theft charge, a crime that cannot serve as a predicate crime for a felony-murder charge, and proceeded to trial on the charges of murder and attempted murder.

The parties submitted instructions while the defendant was putting on his case in chief; the court settled the instructions after the close of evidence. The prosecution requested a burglary felony-murder instruction to support a conviction of first-degree murder. *See* Cal.Penal Code § 189 (defining first-degree murder as a "willful, deliberate, and premeditated" killing, or one committed in the perpetration, or attempted perpetration, of certain enumerated felonies, including burglary). Over defense counsel's objections that his trial strategy was premised on the assumption that the prosecution would not seek a conviction under a felony-murder theory, the trial court gave the requested instruction. The jury found Stephens guilty

of both murder and attempted murder. Before sentencing, the trial court reduced the attempted murder charge to assault with a deadly weapon. *See* Cal.Penal Code § 245.

In this habeas proceeding, Stephens contends that he was denied adequate notice of the government's felony-murder theory, in violation of the Sixth Amendment's guarantee of adequate notice to prepare a defense. The essence of Stephens' appeal is that the prosecution ambushed him by charging him with felony murder after he had already pled to petty theft.

The facts were not in material dispute. The district court held that constitutionally adequate notice was provided by the prosecution's production of the requested instructions while petitioner was still putting on his case in chief, and by the prosecution's presentation at trial of substantial evidence of burglary, which laid the foundation for a felony-murder instruction. The district court also held that petitioner's attorney's opening statement, urging a theory as to when Stephens had formed his intent to steal, supported a finding that he had adequate notice of the state's intent to prove burglary. Stephens' asserted assumption that the prosecution would not pursue a felony-murder charge because he had not been charged with the underlying burglary was, the district court concluded, "a slender reed upon which to lean."

■ On appeal, Stephens relies heavily on a declaration of his trial counsel, stating that had the prosecution earlier apprised counsel of its intent to rely on a burglary felony-murder theory, he would have conducted the defense in a different manner. Trial counsel declared that he would have "reevaluated the tactic of pleading guilty prior to trial to the petty theft," and that he would have called appellant to the stand to negate the state's evidence of entry with intent to steal.

■ The Sixth Amendment guarantees a criminal defendant the fundamental right to be clearly informed of the nature and course of the charges in order to permit adequate preparation of a defense.[1] *See*

1. The Sixth Amendment provides that "In all

criminal prosecutions, the accused shall enjoy

*Sheppard v. Rees,* 909 F.2d 1234, 1236 (9th Cir.1990). The notice provision of the Sixth Amendment is incorporated within the Due Process Clause of the Fourteenth Amendment and is fully applicable to the states. *See Gray v. Raines,* 662 F.2d 569, 571 (9th Cir.1981).

 Stephens acknowledges that the state never told defense counsel it would not ask for a felony-murder instruction, and he further acknowledges, as he must, that under clear California law, the jury may be instructed on felony murder even though the indictment does not expressly set out such a theory. *See People v. Gallego,* 52 Cal.3d 115, 276 Cal.Rptr. 679, 719, 802 P.2d 169 (1990) (en banc), *cert. denied,* 502 U.S. 924, 112 S.Ct. 337, 116 L.Ed.2d 277 (1991) (noting well-established rule that "a pleading charging murder adequately notifies a defendant of the possibility of conviction of first degree murder on a felony-murder theory"); *People v. Murtishaw,* 29 Cal.3d 733, 175 Cal.Rptr. 738, 747 n. 11, 631 P.2d 446, 455 n. 11 (1981), *cert. denied,* 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 464 (1982); *In re Walker,* 10 Cal.3d 764, 112 Cal.Rptr. 177, 187–88, 518 P.2d 1129, 1139–40 (1974) (en banc). In addition, as the district court correctly determined, it is not necessary in California to charge a defendant separately with the underlying felony in order for a felony-murder instruction to obtain. *See People v. Johnson,* 233 Cal.App.3d 425, 453–57, 284 Cal.Rptr. 579 (1991), *cert. denied,* 503 U.S. 963, 112 S.Ct. 1568, 118 L.Ed.2d 213 (1992).

Stephens argues that the prosecution's "course of charging" affirmatively misled him, to the detriment of his defense. He seeks to bring himself within this court's holding in *Sheppard v. Rees,* 909 F.2d 1234 (9th Cir.1989). The analogy is inapt.

In *Sheppard,* the government tried the case to the jury on the theory that the killing was premeditated and deliberate. *See id.* at

1235. Both sides rested, then submitted and argued their requested jury instructions to the court. *See id.* The prosecution's instructions made no mention of felony murder. *See id.* The next day, over the defense's objection, such an instruction was requested by the prosecution and given, and appellant was convicted of first-degree murder. *See id.* at 1235–38. On appeal, the state conceded that in the circumstances of Sheppard's case, "a pattern of government conduct affirmatively misled the defendant, denying him an effective opportunity to prepare a defense," and resulting in ambush. *Id.* at 1236. This court agreed, rejected any harmless error analysis, and reversed. *See id.* at 1237–38.

We distinguished *Sheppard* in *Morrison v. Estelle,* 981 F.2d 425 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2367, 124 L.Ed.2d 273 (1993), a case in which, as in *Sheppard* and the case at bar, the charging document charged the defendant with neither felony-murder nor the predicate crime. In *Morrison,* the trial court gave the state's requested instructions on a robbery felony-murder theory as well as a premeditation theory, and Morrison was convicted of first-degree murder. *See id.* at 427. Affirming the district court's denial of Morrison's habeas petition, we distinguished *Sheppard,* characterizing it as a "narrow ruling," and noting that California courts have limited the application of *Sheppard* strictly to its facts. *See* 981 F.2d at 428. We pointed out that in *Sheppard,* the prosecution ambushed the defense with a new theory of culpability after both sides had rested and after the jury instructions were settled. *Morrison* held that constitutionally adequate notice had been provided the defendant by the two days he had to prepare a closing argument after the initial instructions conference, and, as an independent ground, by evidence of the underlying felony presented at trial. *See id.* Both of these grounds are present here.[2]

the right ... to be informed of the nature and cause of the accusations...."

**2.** In *Morrison,* we expressly declined to reach the question whether, as California courts have held, a charge of murder, without a specific charge of felony murder or robbery in the charging document, provides constitutionally adequate notice

to defendants of the charges against them, absent any other notice during the proceedings. *See* 981 F.2d at 427. We did so because we found that Morrison had received adequate notice during his trial. *See id.* Here, too, because we hold that Stephens received constitutionally adequate notice at trial, we decline to reach the question

Stephens' claim of inadequate notice is, in fact, even weaker than Morrison's. In this case the prosecution produced its requested jury instructions on January 17, 1986, while petitioner was still putting on his case in chief. The instructions were settled at the final instructions conference on January 22, 1986, before the commencement of closing arguments later that day. Thus, prior to closing arguments, petitioner in this case had five days of actual notice of the prosecution's intention to rely on a felony-murder theory if the requested instruction was granted, not two days as in *Morrison.*

In addition, the district court in this case correctly pointed out: "As in *Morrison,* the prosecutor in this case provided notice of a felony-murder theory by presenting substantial evidence of burglary at trial." The prosecution's case included evidence that the petitioner arrived at the market in a van, and parked down the street from the market, in spite of the availability of spaces in front of the market. He entered the store armed with a concealed deadly weapon and used the weapon to facilitate his escape. Trial counsel's opening statement reflected his concern that burglary was at issue in this trial. The prosecutor stated that the petitioner entered the market, did not attempt to buy anything, stole a steak and stabbed the murder victim as he attempted to exit. Stephens' trial counsel then responded that petitioner entered the market to buy beer and cigarettes, and formed the intent to steal only after he had gotten in line to buy meat and had discovered he did not have enough money. The state court of appeal noted, accurately, that the only legal significance of such a fact would be the defeat of a burglary felony-murder theory. Trial counsel's opening statement flatly contradicts any assertion of unfair surprise flowing from the prosecution's request of a felony-murder instruction.

The dissent's ambush theory incorrectly assumes that Stephens received nothing for his guilty plea to the charge of petty theft with a prior. The record establishes that in return for the plea, the parties agreed that the prosecution could bring the plea to theft before the jury,[3] but that so long as Stephens did not take the stand, the prosecutor would not bring before the jury the prior conviction of robbery. During the plea proceedings, trial counsel acknowledged this quid pro quo, and added an additional purpose for the plea: admission "to the obviously guilty conduct" would "enhance my client's chances at trial." (RT 425) In state appellate court oral argument, trial counsel proffered still another rationale for the plea: "the idea of strategically simplifying the issues in the trial". (RT 1513) In short, by his own trial counsel's statements, Stephens' plea served several strategic purposes.

Even if we accept at face value trial counsel's current declaration that he assumed the prosecution would not ask for a felony-murder instruction, the prosecution made no such promise. The plea was calculated moreover to serve several strategic ends. In retrospect, given Stephens' conviction for felony-murder, the tactic of pleading to petty theft may seem impolitic. Flawed strategy on the part of defense counsel, however, does not implicate prosecutorial misconduct.

In toto, the circumstances of this case belie any claim that the prosecution affirmatively misled the defendant, or that Stephens lacked constitutionally adequate notice of the felony-murder charge. We thus decline to extend *Sheppard*'s "narrow" holding.

AFFIRMED.

ALDISERT, Circuit Judge, Dissenting.

I would reverse the denial of Dennis L. Stephens' petition for writ of habeas corpus. Accordingly, I dissent.

As the majority note, an accused has "a fundamental right to be clearly informed of the nature and cause of the charges in order to permit adequate preparation of a defense." *Sheppard v. Rees,* 909 F.2d 1234, 1236 (9th Cir.1989). Thus, "Due process entitles an accused to know the charges against which he must defend in order to have a reasonable

___

of the constitutionality of California's charging practice.

3. Defense counsel instructed potential jurors during voir dire that Stephens had admitted to the petty theft.

opportunity to prepare and present a defense and not be taken by surprise at trial." *Usher v. Gomez,* 775 F.Supp. 1308, 1313 (N.D.Cal.1991), *aff'd,* 974 F.2d 1344 (1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1007, 122 L.Ed.2d 156 (1993). In this case, the State of California denied Stephens his right to due process by ambushing him with a request for a felony-murder instruction after charging him *not* with the underlying offense of burglary, but instead with petty theft, and after inducing him to plead guilty to the petty theft count.

The State chose to indict Stephens on three counts: a generic charge of murder under Cal.Penal Code § 187 and attempted murder under Cal.Penal Code § 245, and a charge of petty theft with a prior conviction under Cal.Penal Code § 666. It decided not to charge Stephens with burglary, the only potential predicate offense, under the facts presented by the prosecution, permitting a felony-murder conviction under Cal.Penal Code § 187, and instead elected to charge him with the less serious petty theft (shoplifting), an offense that by statute may not serve as the basis for a felony-murder conviction. Although Stephens could have been charged with burglary as well, he could not have been punished for both offenses, which arose from a single act of taking some meat from a market. *See People v. Bernal,* 22 Cal.App.4th 1455, 1458, 27 Cal.Rptr.2d 839 (1994). The indictment as fashioned by the prosecution lulled Stephens into believing burglary was not part of the case and, consequently, that felony-murder was not a viable hook on which the prosecution could hang its hat. By waiting until Stephens pleaded guilty to shoplifting before springing its burglary felony-murder theory, the State violated Stephens' rights assured by the due process clause. After proceeding on a premeditated murder theory, the prosecution changed horses in the midst of the jurisprudential stream and proceeded to rely on felony-murder as well, with burglary constituting the predicate offense. This is more than dirty pool; this is a violation of the Constitution.

It is important to clear the air and emphasize what is not before us. Here we do not have a mine-run California case with a generic charge of murder. Under California's "short form" of criminal charging, as prescribed by Cal.Penal Code §§ 951 and 952 the prosecution may play its cards close to its vest. It need not reveal its theory, nor must it elect to proceed to the jury on any particular concept of murder. *See, e.g., People v. Bernard,* 27 Cal.App.4th 458, 470, 32 Cal. Rptr.2d 486 (1994) ("it is not necessary to separately charge a defendant with either a felony-murder theory or the underlying felony"). First-degree murder in California includes a killing that is "willful, deliberate, and premeditated," or that is committed in the perpetration, or attempt to perpetrate, certain felonies, including burglary, and not including the petty offense of shoplifting. Cal.Penal Code § 189.

Had Stephens been charged only with murder, uniform state and federal case law suggests a generic murder charge would have been constitutionally adequate to place him on notice that all theories of murder may be pursued. However, in this case Stephens was affirmatively charged with the underlying offense of petty theft, which can never serve as the predicate to a felony-murder conviction. This is a critical distinction.

Second, this is not merely a case alleging late notice of the particular theory of murder. Generally, where a defendant is prosecuted on a generic murder charge and the prosecution seeks a felony-murder instruction prior to closing argument, the ambush situation is avoided. *Morrison,* 981 F.2d at 428. Here, although the majority is correct in stating that the State requested a felony-murder instruction while Stephens was putting on his case in chief, the request came after Stephens pleaded guilty to petty theft. This is a distinction *with* a difference. The record suggests that he pleaded guilty to this count in part to negate any inferences of premeditated murder. However, Stephens' admission to shoplifting incriminated him under a felony-murder theory. It assisted the prosecution in proving burglary and, consequently, felony-murder. *See Calderon v. Borg,* 857 F.Supp. 720, 725 (N.D.Cal.1994) ("[T]he point in this case is not the period of time that

elapsed. The point is the fact that petitioner had already testified without knowing that he would be confronted with [another theory of murder], and gave testimony which incriminated himself under that theory.").

A murder trial is not one of the "games that people play." The due process clause does not serve as an innocent bystander. It acts as the umpire and referee all rolled into one and calls "foul" where rules of fair play are broken. As Justice Scalia noted, paraphrasing the felicitous expression of Justice Holmes seventy years earlier, due process requires the government to "turn square corners." *Jones v. Thomas,* 491 U.S. 376, 396, 109 S.Ct. 2522, 2533, 105 L.Ed.2d 322 (1989) (Scalia, J., dissenting). Society is obliged to prosecute those who break its rules, but society may not break its own rules in the prosecution process. That is precisely what the State of California did here. It did not turn square corners. As a result, the defendant became the victim of what was known in old California as an *ambuscado*[1] and was denied the protection of the due process clause.

This is vividly made clear in the declaration by Stephens' trial counsel asserting that he was "never afforded any notice whatsoever that the prosecutor intended to ask for a jury instruction on first degree burglary murder," and that he "prepared and conducted the defense at trial with the understanding that burglary was not an issue." Specifically, he stated: "I would have reevaluated the tactic of pleading guilty prior to trial to the petty theft. Perhaps most important, I would definitely have had appellant testify to his lack of intent to steal at the time of entering the store, thus providing the jury with evidence negating an essential element of burglary." ER 22–23.

The State of California's concession on rehearing before the court of appeals in *Sheppard,* apparently made in an effort to remove the Sixth Amendment issue from that case and save its "short form" murder charge

from judicial invalidation, holds true in this case as well:

> [T]he difficulty in this case arises not because California's murder pleading practice furnishes inadequate notice, but because a pattern of government conduct affirmatively misled the defendant, denying him an effective opportunity to prepare a defense. 'The defendant was ambushed.'

909 F.2d at 1236 (quoting *Gray v. Raines,* 662 F.2d 569, 575 (9th Cir.1981) (Tang, J., specially concurring)).

I would reverse the judgment of the district court and grant the writ.

---

1. Shakespeare was no stranger to the expression: "And then dreams he.... Of breaches, ambuscadoes, Spanish blades." *Romeo and Juliet,* I iv. 53.1.