207 P.3d 688

**STATE of Arizona, Appellee,**

v.

**Mark Allen FREENEY, Appellant.**

**No. 1 CA–CR 07–0448.**

Court of Appeals of Arizona,
Division 1, Department B.

Nov. 20, 2008.

Review Granted June 1, 2009.

Terry Goddard, Arizona Attorney General by Kent E. Cattani, Chief Counsel, Criminal Appeals/Captial Litigation Section, and Melissa A. Parham, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Kessler Law Offices by Eric W. Kessler, Mesa, Attorney for Appellant.

1. We view the facts in the light most favorable to sustaining the verdict, and we resolve all reasonable inferences against Appellant. *State v. Greene*, 192 Ariz. 431, 436, ¶ 12, 967 P.2d 106, 111 (1998).

2. We cite the current version of the statute because no revisions material to our analysis have since occurred.

3. Specifically, the indictment charged that Appellant,

> on or about the 24th day of October, 2006, using a METAL BAR or PIPE, a deadly weapon or dangerous instrument, intentionally placed [the victim] in reasonable apprehension of imminent physical injury, in violation of

## OPINION

WINTHROP, Presiding Judge.

¶ 1 Mark Allen Freeney ("Appellant") appeals from his conviction and sentence for aggravated assault. He contends that his conviction should be vacated because the trial court violated his Sixth Amendment right to notice in allowing the State to amend the indictment before jury *voir dire* on the first day of trial, changing the theory of the underlying assault from "[i]ntentionally placing another person in reasonable apprehension of imminent physical injury" to "[i]ntentionally, knowingly or recklessly causing any physical injury to another person." For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY[1]

¶ 2 On November 6, 2006, a grand jury issued an indictment, charging Appellant with aggravated assault, a class three dangerous felony and domestic violence offense, in violation of Arizona Revised Statutes ("A.R.S.") sections 13–1203 (2001) and 13–1204 (Supp.2008[2]).[3] The allegation of dangerousness in the indictment stated as follows:

> The State of Arizona further alleges that the offense charged in this count is a dangerous felony because the offense involved the discharge, use, or threatening exhibition of a METAL BAR or PIPE, a deadly weapon or dangerous instrument and/or the *intentional or knowing infliction of serious physical injury* upon [the victim], in violation of A.R.S. § 13–604(P).

(Emphasis added.)[4]

¶ 3 On March 9, 2007, at the Final Trial Management Conference, the parties pre-

A.R.S. §§ 13–1203, 13–1204, 13–3601, 13–701, 13–702, 13–702.01, and 13–801.

4. The State later filed an Allegation of Aggravating Circumstances Other Than Prior Convictions, also alleging that the offense involved the infliction or threatened infliction of serious physical injury. On December 5, 2006, the State electronically filed an amendment to the allegation of dangerousness, alleging that Appellant's offense

> as charged in the Indictment is a dangerous felony offense that involves the discharge, use, or threatening exhibition of a deadly weapon or dangerous instrument, to-wit: Metal bar or pipe, and/or *involves the intentional or knowing*

pared a joint pretrial statement, in which the State listed as a witness the emergency room physician who had treated the victim. The joint pretrial statement also provided a brief statement of the case as follows:

> The state alleges that on October 24, 2006 *the defendant hit the victim [ ] several times in the head and body with a metal bar while threatening to kill her. The victim received a head injury from the beating and was transported to the hospital.* At the time of the assault the victim and defendant had been residing together for approximately one year.
>
> The Defendant denies these allegations.

(Emphasis added.)

¶ 4 On Thursday, March 15, 2007, the first day of trial, before jury selection, the State moved to amend the indictment to change the theory of the underlying assault from A.R.S. § 13–1203(A)(2)—intentionally placing another person in reasonable apprehension of imminent physical injury—to A.R.S. § 13–1203(A)(1)—intentionally, knowingly, or recklessly causing any physical injury to another person.[5] Defense counsel objected based on the timing of the motion, but admitted he had been aware the victim was injured because the reports he had received referenced the injuries. The prosecutor noted without objection that defense counsel had received notice not only through the police reports, but also through the victim's medical records and photographs of her injuries. Based on defense counsel's acknowledgement that he knew about the injuries and the police reports referencing the injuries, the trial court concluded that the Sixth Amendment notice requirement had been sufficiently met and allowed the State to amend the indictment. The court further determined that Appellant was not prejudiced by the amendment.

¶ 5 Opening statements and witness testimony commenced on Monday, March 19, 2007. The following evidence was presented:

On the evening of October 24, 2006, Angel G. and her son were in the laundry room of their mobile home complex. Angel heard a woman outside the laundry room crying and saying, "Please stop." Angel went to the window and observed Appellant hit the victim, his girlfriend, with a large metal bar or pipe. Angel then heard the victim scream, "Please. You know, I'm sorry." Angel observed blood gushing from the victim's head, and she also heard Appellant say that he was going to kill the victim. Angel told her son to run to her house and retrieve her cell phone and a wet rag. After he returned, she called the police from inside the laundry room.

¶ 6 Angel also observed another man standing outside with Appellant and the victim, and Appellant told the man to not allow the victim to escape through the courtyard gate. Appellant proceeded to strike the victim several more times with the metal bar. The victim and Appellant eventually entered their home, and then came back outside. Angel called the victim over to the laundry room window and asked her if everything was "okay." The victim responded affirmatively, and Angel gave the victim the rag to wipe some of the blood from her head.

¶ 7 Appellant continued to "fight" with the victim for a moment, but then he and the other man left the property. Angel told the victim to sit down and wait until the police arrived. After the police arrived, Angel showed them the pipe that Appellant had used, as well as a box cutter that Appellant had briefly wielded to threaten the victim, while saying that "he was going to slice her up" and kill her.

¶ 8 Angel testified that she knew and recognized both Appellant and the victim because they rented a home together at the complex, and Angel was a friend of the victim's and had known Appellant for a long time. Angel also testified that she never

*infliction of serious physical injury* upon [the victim].
(Emphasis added.)

5. The apparent reason for the amendment was that the victim, in custody herself on a drug-related charge, had recanted her earlier statements about Appellant's involvement. Accord-

ingly, she was probably not going to provide testimony sufficient to prove "apprehension of imminent physical injury." However, the fact of the victim's injuries—and Appellant's responsibility for same—could be proven without calling the victim to testify.

observed the victim strike Appellant or fight back against him.

¶ 9 Officers Yoder and Galus of the Phoenix Police Department responded to Angel's emergency call. Officer Yoder testified that, upon arriving at the scene, he spoke to the victim, who was bleeding profusely from the side of her head and had blood running down onto her neck. The victim seemed "distraught," "shaken up," and "hysterical," and she initially behaved as though she was "in a daze." Although she was at first uncooperative, she eventually told Officer Yoder that she had been at home with Appellant and some friends, having a party. She and Appellant began to argue, and Appellant grabbed a metal pipe and struck her approximately ten times—approximately four blows struck her head and six struck her body. The victim stated that Appellant left the area before the police arrived, but she provided a physical description of him and the weapon that he used. Officer Yoder recovered a metal pipe on the property.

¶ 10 Officer Galus testified that he noticed the victim had a "substantial" head injury and was bleeding. He also heard the victim state that Appellant had struck her with a metal pipe or bar approximately ten times and that Appellant left the scene before officers arrived. Additionally, the victim told Officer Galus that Appellant had brandished a box cutter, held it to her throat, and stated that he was going to kill her.

¶ 11 Officer Yoder summoned the Phoenix Fire Department, whose members administered first aid and then transported the victim to the hospital. In the emergency room, the victim told the treating physician that she had been involved in a fight and been hit on the head, face, left wrist, and left side with a metal bar or pipe. The victim was crying and bleeding, and the physician observed that she had a large laceration on the back of her scalp approximately four inches long and very deep, penetrating all the way down to her skull. The physician also noted that the victim was in pain and had bruising and swelling on her left wrist and face, including over her eye.

¶ 12 The physician determined that the injuries to the victim's head and body were highly suggestive of blunt force trauma and consistent with being hit with a metal bar. The large cut on the victim's scalp required approximately one dozen staples to close the wound.

¶ 13 Two days later, on October 26, 2006, Officers Yoder and Galus spoke with Appellant. Appellant admitted that he lived with the victim; he had been at their home on October 24, 2006; and he and the victim had an "argument." Appellant also told Officer Yoder that he was not worried about the case going to trial, because he knew that the victim would not testify against him. Officer Yoder believed throughout the interview that Appellant maintained an attitude demonstrating that he was not at all concerned.

¶ 14 At trial, the victim testified, but, after stating that the two were still involved in a relationship, she recanted her previous statements against Appellant. She claimed that, on the evening of October 24, she and Appellant were at home "[g]etting high" on crack cocaine, but Appellant left, and "someone else" came in and attacked her.[6] She stated that she could not remember speaking to the police or being injured, although she remembered passing out in the emergency room.

¶ 15 The jury found Appellant guilty of aggravated assault and found that the offense was a dangerous offense and a domestic violence offense. The trial court found Appellant in automatic violation of his probation on another case.

¶ 16 At sentencing, the trial court determined that Appellant had at least two historical prior felony convictions and sentenced him to a presumptive term of 11.25 years' imprisonment in the Arizona Department of Corrections ("ADOC"). The court also credited him for 201 days of pre-sentence incarceration. For Appellant's probation violation, the court sentenced him to one year's imprisonment in ADOC, to run consecutive to his sentence in the instant case, and credited him for 304 days of pre-sentence incarceration.

**6.** Appellant did not testify, but at sentencing, he made statements implying that the "someone else" was the victim's drug dealer looking for payment.

¶ 17 We have jurisdiction over Appellant's timely appeal. *See* Ariz. Const. art. 6, § 9; A.R.S. §§ 12–120.21(A)(1) (2003), 13–4031 (2001), –4033(A) (2001).

## ANALYSIS

¶ 18 Appellant contends that the trial court violated his Sixth Amendment right to notice by permitting the State to amend the indictment before jury *voir dire* on the first day of trial. Relying on *State v. Sanders,* 205 Ariz. 208, 68 P.3d 434 (App.2003), he argues that amending the indictment changed the nature of the offense with which he was charged, and prejudice must therefore be presumed.

¶ 19 We review for an abuse of discretion the trial court's decision to grant a motion to amend the indictment. *See State v. Johnson,* 198 Ariz. 245, 247, ¶ 4, 8 P.3d 1159, 1161 (App.2000) (citation omitted); *State v. Delgado,* 174 Ariz. 252, 254, 848 P.2d 337, 339 (App.1993). However, we review de novo issues of constitutional interpretation. *Massey v. Bayless,* 187 Ariz. 72, 73, 927 P.2d 338, 339 (1996).

¶ 20 The Sixth Amendment to the United States Constitution regulates the charging of a criminal offense, requiring that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." "The purpose of an indictment or information is to give notice of the offense charged so that the accused may prepare a defense." *State v. Schwartz,* 188 Ariz. 313, 319, 935 P.2d 891, 897 (App.1996) (citation omitted). Rule 13.2(a) of the Arizona Rules of Criminal Procedure describes the requirements of an indictment: "The indictment or information shall be a plain, concise statement of the facts sufficiently definite to inform the defendant of the offense charged." "[T]he indictment need only contain a notice of the charges—not the prosecution's theory under which it will proceed at trial." *Schwartz,* 188 Ariz. at 320, 935 P.2d at 898 (citation omitted).

¶ 21 Arizona courts are generally quite liberal in allowing amendments, provided that the amendment does not lead to a charge of a different crime. *State v. Williams,* 108 Ariz. 382, 387, 499 P.2d 97, 102 (1972) (citing *State v. Suarez,* 106 Ariz. 62, 470 P.2d 675 (1970)). Arizona Rule of Criminal Procedure 13.5(b) governs the amendment of an indictment:

> The preliminary hearing or grand jury indictment limits the trial to the specific charge or charges stated in the magistrate's order or grand jury indictment. The charge may be amended only to correct mistakes of fact or remedy formal or technical defects, unless the defendant consents to the amendment. The charging document shall be deemed amended to conform to the evidence adduced at any court proceeding.

¶ 22 Generally, "a technical or formal defect in a charging document may be remedied whenever such defect is presented." *State v. Bruce,* 125 Ariz. 421, 423, 610 P.2d 55, 57 (1980) (citations omitted). Further, "[a] defect may be considered formal or technical when its amendment does not operate to change the nature of the offense charged or to prejudice the defendant in any way." *Id.* (citations omitted) (holding that a defendant was not prejudiced by amendment of the indictment during trial to change the alleged offense dates because he had notice of the discrepancies well before trial).

¶ 23 In *Sanders,* the defendant was originally charged with aggravated assault—by knowingly touching a police officer with the intent to injure, insult, or provoke him, under A.R.S. § 13–1203(A)(3) and former § 13–1204(A)(5) and (B). 205 Ariz. at 212, ¶ 5, 68 P.3d at 438. At the preliminary hearing before the indictment issued, the State arguably produced no evidence that the police officer had apprehended any imminent physical injury from the defendant. *Id.* at 211, ¶ 4, 68 P.3d at 437.[7] At trial, during direct examination, the prosecutor did not ask the officer whether he had feared that the defen-

---

7. The dissent disagreed with this characterization of the record, noting that the officer testified at the preliminary hearing that Sanders' " 'belligerent and cursing' behavior 'from the initial contact . . . led me to believe that I was in a potential situation of being injured.' " *Sanders,* 205 Ariz. at 228, ¶ 92, 68 P.3d at 454 (Hall, J., dissenting).

dant might physically harm him. *Sanders*, 205 Ariz. at 212, ¶ 7, 68 P.3d at 438. The defendant did not conduct cross-examination regarding whether the officer reasonably apprehended any physical injury from the defendant. *Id.* at ¶ 8, 68 P.3d 434. After the State rested, the prosecutor moved to amend the indictment for aggravated assault from one involving a knowing touching of another, proscribed by A.R.S. § 13–1203(A)(3), to one intentionally placing another in reasonable apprehension of imminent physical injury, a violation of A.R.S. § 13–1203(A)(2). *Id.* at ¶ 9, 68 P.3d 434. Although the defendant objected, the trial court granted the State's motion. *Id.* at ¶ 10, 68 P.3d 434.

¶ 24 After the defense presented its case, defense counsel renewed her objection to the amendment, noting that she was "having a difficult time coming up with what my closing is going to be, let alone jury instructions, because now we have changed the charge." *Id.* at 213, ¶ 12, 68 P.3d at 439. The trial court again overruled defense counsel's objections, and the defendant was convicted. *Id.* at ¶¶ 14–15, 68 P.3d 434.

¶ 25 On appeal, the specific issue facing this court was whether "the trial court violate[d] the Sixth Amendment's notice requirement when it permitted the state to amend the assault charge after the close of the state's case-in-chief." *Id.* at ¶ 15, 68 P.3d 434. The majority of the court concluded that the amendment allowed by the trial court changed the "nature" of the offense, because the "reasonable apprehension" charge was the traditional type of assault, while the "knowing touching" constituted the traditional common law crime of battery. *Id.* at 216–17, ¶ 33, 68 P.3d at 442–43; *accord In re Jeremiah T.*, 212 Ariz. 30, 34, ¶ 12, 126 P.3d 177, 181 (App.2006). Further, because the nature of the offense had changed, the majority concluded that prejudice was conclusively presumed. *Sanders*, 205 Ariz. at 214, ¶ 20, 68 P.3d at 440; *accord Jeremiah T.*, 212 Ariz. at 34, ¶ 13, 126 P.3d at 181. The court reasoned that "when a trial commences with one charge and that charge is thereafter amended to change the nature of the offense, the record of that trial is useless as a tool to determine whether a defendant was preju-

diced by the amendment." *Sanders*, 205 Ariz. at 215, ¶ 22, 68 P.3d at 441. The court further explained, "To hold that the state must tell a defendant in advance under which of the two [offenses] he is being prosecuted, and to preclude the state from changing its mind in the middle of trial and thereby presumptively prejudicing the defendant, is a requirement of the Sixth Amendment that does not disappear by changing statutory nomenclature." *Id.* at 218, ¶ 44, 68 P.3d at 444. The majority also noted that "the one constant upon which the [defense] lawyer ought to be able to rely is that once the jury is seated, the charge will not change unless her client consents." *Id.* at 221, ¶ 61, 68 P.3d at 447.

¶ 26 Ultimately, the majority held "that an amendment proposed mid-trial that changes the nature of the original charge deprives an accused of the type of notice and opportunity to prepare a defense contemplated by the Sixth Amendment and is therefore not permitted by Rule 13.5(b)," Arizona Rules of Criminal Procedure. *Id.* at 211, ¶ 1, 68 P.3d at 437. Thus, under *Sanders*, a defendant is presumptively prejudiced when the State amends an indictment mid-trial to alter the nature of the charged offense. *Id.* at 218, ¶ 44, 68 P.3d at 444.

■ ¶ 27 We conclude that *Sanders* does not control our analysis because, in this case, the amendment to the indictment occurred before jury selection rather than mid-trial, and Appellant has not shown actual prejudice resulting from the amendment. "A fair trial, as the United States Supreme Court has observed, is 'one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues *defined in advance of the proceeding.*'" *Id.* at 214, ¶ 17, 68 P.3d at 440 (quoting *Strickland v. Washington*, 466 U.S. 668, 685, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)) (emphasis added to original).

■ ¶ 28 Both *Sanders* and this case involve the amendment of an aggravated assault charge. However, unlike *Sanders*, in this case the State moved to amend Appellant's indictment *before* jury *voir dire* on the first scheduled day of trial. Accordingly, whether the nature of the offense changed

(as the majority in *Sanders* held) or not (as the dissent in Sanders concluded), the amendment here occurred before the jury was impaneled and any evidence was presented, and therefore the concerns voiced by the majority in Sanders about the inability of defense counsel to present a competent defense, given a possible change in strategy mid-trial after witnesses had already been cross-examined, are substantially mitigated. Further, the ultimate crime charged is the same. *See Williams*, 108 Ariz. at 387, 499 P.2d at 102. Consequently, we decline to impose the prejudice-per-se rule of *Sanders*, and instead conclude that Appellant must show that he suffered actual prejudice from the amendment.

■ ¶ 29 Although Appellant implies that the amendment may have required defense counsel to "re-prepare" at the last possible moment based on the new charge, the record does not support his implication. Appellant's attorney objected to the timing of the motion, but he did not seek a continuance or otherwise indicate that the amendment affected his strategy or preparation for trial, and he candidly admitted having notice from police reports of the victim's injuries, which formed the basis of the amended charge. Additionally, the prosecutor noted without objection that defense counsel had also received copies of the medical reports and photos of the victim's injuries. Further, Appellant had notice that the State had alleged dangerousness in the indictment and amended indictment based in part on "the intentional or knowing infliction of serious physical injury upon [the victim]." Thus, Appellant knew that his defense would likely need to somehow address the allegation that he had inflicted physical injury on the victim.[8] Appellant's defense at trial did just that, because he relied on a

global, or "all or nothing," defense; he defended on the basis that he simply did not commit assault in any form, and he relied on the victim's testimony that someone else had attacked her. *See, e.g., State v. Ramsey*, 211 Ariz. 529, 533, ¶ 7, 124 P.3d 756, 760 (App. 2005) (stating that the defendant had not specifically articulated how his defense was impaired or prejudiced by the amended indictment when his defense was that he did not commit the alleged acts).[9]

¶ 30 Based on the foregoing, the record supports finding that Appellant's constitutional rights, including his Sixth Amendment right to notice, were not violated, and he has not shown that his defense was prejudiced or hindered in any way by a lack of notice. *See generally Johnson*, 198 Ariz. at 248, ¶ 8, 8 P.3d at 1162 (stating that the appellant bears the burden of proving actual prejudice from an amendment); *Delgado*, 174 Ariz. at 255, 848 P.2d at 340.

■ ¶ 31 Finally, Appellant notes that, in seeking amendment of the indictment, the State failed to comply with the time requirements set forth in Rule 16.1(b) of the Arizona Rules of Criminal Procedure. Rule 16.1(b) provides in pertinent part as follows: "All motions shall be made no later than 20 days prior to trial, or at such other time as the court may direct." Rule 16.1(c) further provides that an untimely motion "shall be precluded, unless the basis therefor was not then known, and by the exercise of reasonable diligence could not have been known, and the party raises it promptly upon learning of it." Appellant's brief itself provides the basis for the State's amendment request, because it makes clear that the victim had suddenly chosen either to not testify or to recant her statements—and her ultimate testimony at trial bears this out. Further, the

---

8. Also, as we have recognized, the joint pretrial statement included the following allegation: "The victim received a head injury from the beating and was transported to the hospital." Further, the State listed the emergency room physician as a witness in the pretrial statement.

9. Moreover, it is somewhat incongruous that Appellant specifically acknowledged before trial that he was well aware of the nature and extent of the victim's injuries, but now claims on appeal that his attorney was not adequately prepared to

address a charge based upon those injuries. *See generally State v. Henderson*, 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005); *State v. Valdez*, 160 Ariz. 9, 13–14, 770 P.2d 313, 317–18 (1989) ("Defendant cannot take his chances on a favorable verdict, reserving the 'hole card' of a later appeal on an evidentiary matter that was curable at trial, and then seek appellate reversal from an unfavorable verdict."), *overruling on other grounds recognized in State v. Rojers*, 216 Ariz. 555, 560, ¶ 24, 169 P.3d 651, 656 (App.2007).

record indicates that the State first became aware of the victim's change of heart immediately before trial and discussed it in a telephonic conference with defense counsel at approximately 12:00 p.m. on the day of trial. The record also shows that the State moved to amend the indictment at the first possible opportunity that afternoon before trial.

¶ 32 We find no abuse of the trial court's discretion in granting the State's motion to amend the indictment before jury *voir dire* on the first scheduled day of trial. *See Delgado*, 174 Ariz. at 254, 848 P.2d at 339 ("The trial court has considerable discretion in resolving motions to amend an indictment."). At most, the trial court's grant of the State's motion without further inquiry in this case was a technical violation of Rule 16.1(b) and (c), and upon the whole case, it appears that substantial justice was done; accordingly, we do not reverse. *See* Ariz. Const. art. 6, § 27; *State v. Sustaita*, 119 Ariz. 583, 591, 583 P.2d 239, 247 (1978).[10]

## CONCLUSION

¶ 33 Appellant's conviction and sentence are affirmed.

CONCURRING: ANN A. SCOTT TIMMER, Chief Judge.

HALL, Judge, concurring in the result.

¶ 34 I agree with the lead opinion that Appellant cannot show that he was prejudiced by the amendment to the indictment on the first day of trial. However, regardless of prejudice, Rule 13.5(b) is violated when an amendment changes the nature of the offense. *State v. Bruce*, 125 Ariz. 421, 423, 610

P.2d 55, 57 (1980) (explaining that the type of formal or technical defect that may be remedied pursuant to Rule 13.5(b) is one that "does not operate to change the nature of the offense charged *or* to prejudice the defendant in any way") (emphasis added); *see* 5 Wayne R. LaFave et al., *Criminal Procedure* § 19.5(b) (3d ed.2007) (citing "general agreement that [the prohibition against amendments that charge a different offense] stands without regard to the absence of prejudicial surprise"). As my colleagues acknowledge, adherence to the *Sanders'* majority would require us to find that the amendment here changed the nature of the charged offense. And if the amendment here did indeed change the nature of the offense with which Appellant was charged, then it was prohibited by Rule 13.5(b) and the trial court abused its discretion by granting it. Moreover, again pursuant to *Sanders,* the only appropriate remedy is automatic reversal. Although the lead opinion's decision not to apply *Sanders'* automatic-reversal rule under the circumstances of this case in which Appellant is unable to show any prejudice is commendable, I doubt that there is a principled basis on which both *Sanders* and the lead opinion's analysis can co-exist.[11] Instead, I would find that the amendment here did not change the nature of the offense, thus overruling *Sanders* on this issue. However, even assuming that the amendment did change the nature of the offense and should therefore have been denied, I would nonetheless apply the harmless-error doctrine and affirm the conviction. To do so, however, requires that *Sanders'* prejudicial-per-se analysis be rejected. My colleagues decline to take this step; therefore, I write separate-

---

**10.** Without citation to authority, Appellant argues in the conclusion to his opening brief that "[f]urther prosecution of Appellant under either theory of aggravated assault should be barred by double jeopardy principles." Because we affirm, we need not address this argument.

**11.** In my dissent in *Sanders*, I asserted that aggravated assault on a peace officer in violation of A.R.S. § 13–1204(A)(5)—now § 13–1204(A)(8)(a)—was a single offense that could be committed by alternative means. 205 Ariz. at 224–25, ¶¶ 73–78, 68 P.3d at 450–51. However, a person who assaults a peace officer by causing any physical injury to the officer was guilty then—and now—of a class 5 rather than a class 6

felony. Therefore, I should have stated that aggravated assault on a peace officer *charged* as a class 6 felony, that is, when the underlying theory of the assault is based on A.R.S. § 13–1203(A)(2) (intentionally placing another person in reasonable apprehension of imminent physical injury) or –1203(A)(3) (knowingly touching another person with the intent to injure, insult or provoke such person), is a single offense regardless of the manner of its commission. In such circumstances, present here as in *Sanders*, Rule 13.5(b) prohibits the amendment only if the defendant would be prejudiced were the court to grant it.

ly to explain why I believe the harmless-error doctrine should apply when a trial court erroneously overrules a defendant's objection to a prosecutor's motion to amend an indictment or information pursuant to Rule 13.5(b).

¶ 35 I begin by reviewing the analytical steps taken by the *Sanders'* majority in reaching its prejudicial-per-se holding. First, the court described Rule 13.5(b)[12] as the procedural equivalent of the Sixth Amendment's notice requirement. 205 Ariz. at 213–14, ¶¶ 16–19, 68 P.3d at 439–40 (asserting that the Arizona Supreme Court drafted Rule 13.5(b) as the procedural "mechanism" to regulate compliance with a defendant's Sixth Amendment right "to be informed of the nature and cause of the accusation"). Second, a defendant's claim that he has not been provided adequate Sixth Amendment notice of the nature of the charge is determined by examining the charging instrument alone. *Id.* at 214, ¶ 20, 68 P.3d at 440 (holding that the Sixth Amendment "is violated by an amendment that actually modifies an essential element of the offense charged") (quotation omitted). Third, *Sanders* relies on federal case law for the proposition that "an amendment that actually modifies an essential element of the offense charged … is reversible per se." *Id.* (quotation omitted). Fourth, *Sanders* found that the amendment substituting A.R.S. § 13–1203(A)(2) as the underlying theory of assault in place of § 13–1203(A)(3) changed the nature of the aggravated-assault offense. *Id.* at 216–17, ¶¶ 31–33, 68 P.3d at

442–43 (holding "these two types of assault are in fact distinctly different crimes" and that the amendment "changed the nature of the originally charged offense"). Having determined that the amendment changed the nature of the offense, the court thus concluded that "a finding of inherent, or per se, prejudice is required" regardless of the absence of actual prejudice. *Id.* at 220, ¶ 53, 68 P.3d at 446. If I understand this line of reasoning correctly, *Sanders* stands for the proposition that *any* post-indictment amendment that changes the nature of the offense is reversible per se. *Id.* at 214, 220, ¶¶ 20, 50, 68 P.3d at 440, 446 ("What we hold is that an amendment that changes the nature of the charged offense is prejudicial per se.").[13]

¶ 36 I believe that *Sanders'* prejudicial-per-se analysis is theoretically flawed. The initial error in *Sanders* is its claim that Rule 13.5(b) is the procedural equivalent of the Sixth Amendment's notice requirement. This claim is the linchpin of its analysis because it paved the way for the court's decision to treat an amendment changing the nature of the offense in violation of Rule 13.5(b) as a *constitutional* violation that requires automatic reversal. 205 Ariz. at 214–15, ¶¶ 21–22, 68 P.3d at 440–41. The court did not describe the error as "structural," but its determination that any such error is reversible-per-se implies that it was, thereby precluding harmless-error review. *See State v. Hickman*, 205 Ariz. 192, 199 n. 7, ¶ 29, 68 P.3d 418, 425 n. 7 (2003) ("[S]tructural errors

**12.** For the convenience of the reader, I repeat the full text of Rule 13.5(b):

> **Altering the Charges; Amendment to Conform to the Evidence.** The preliminary hearing or grand jury indictment limits the trial to the specific charge or charges stated in the magistrate's order or grand jury indictment. The charge may be amended only to correct mistakes of fact or remedy formal or technical defects, unless the defendant consents to the amendment. The charging document shall be deemed amended to conform to the evidence adduced at any court proceeding.

**13.** Although the State included a dangerous-nature allegation in the indictment pursuant to A.R.S. § 13–604(P), it was not an element of the crime of aggravated assault as charged by the

grand jury. Indeed, the dangerous-nature allegation could have been filed by the State at any time at least twenty days before trial. *Id.; see also* Ariz. R.Crim. P. 13.5(a). Rather, it placed defendant on notice that if the jury found him guilty of aggravated assault as originally charged, it would then be asked to make a separate finding whether he intentionally or knowingly caused the victim to suffer serious physical injury. To put it another way, had the amendment not been granted, the underlying theory of the assault would have remained unchanged and the jury would not have been instructed on intentional or knowing assault as the theory underlying the aggravated assault charge. Accordingly, neither I nor my colleagues perceive the State's addition of the dangerous-nature allegation to the indictment as a basis for distinguishing *Sanders'* distinct-offense analysis.

require automatic reversal.").[14]

¶ 37 Although the concerns underlying Rule 13.5(b) and the Sixth Amendment notice requirement overlap, superimposing one upon the other is apt to lead to doctrinal confusion because they have different origins and claimed violations of each must be analyzed separately. *See, e.g., United States v. Phillips,* 869 F.2d 1361, 1372 (10th Cir.1988) (Seymour, J. dissenting) ("Although two of the purposes of an indictment are to provide a defendant with notice of the charges against him and to ensure that he is tried only on charges found by a grand jury, these two functions are separate. They involve different considerations and different dispositive factors."); *Fawcett v. Bablitch,* 962 F.2d 617, 618 (7th Cir.1992) (concluding that defective state charging document does not violate due process unless "inadequate notice [leads] to a trial with an unacceptable risk of convicting the innocent" and "[a]rguments pro and con about the requisites of indictments therefore do not matter.").

¶ 38 Certainly, an elementary principle of due process is that a person accused of a crime must be provided "reasonable notice" of the specific charge against him. *In re Oliver,* 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682 (1948) ("A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense ... are basic in our system of jurisprudence ...."). This principle is embodied within Arizona Rule of Criminal Procedure 13.2(a): "The indictment or information shall be a plain, concise statement of the facts sufficiently definite to inform the defendant of the offense charged." Thus, an indictment that complies with Rule 13.2(a) provides the notice to which a defendant is entitled by the Sixth Amendment. But it is entirely different to say, as *Sanders* implicitly does, that the constitutional sufficiency of an indictment

is determined solely by reference to the indictment. Although courts do look initially to the information or indictment in assessing the adequacy of notice, *Calderon v. Prunty,* 59 F.3d 1005, 1009 (9th Cir.1995), the claim in *Sanders* that the Sixth Amendment requires that all essential elements be *plead* in the charging instrument, is, as LaFave notes, "a dubious proposition." LaFave et al. at § 19.3(a). Although such an assertion might have had some merit before the advent of liberal discovery rules, appellate courts now examine the entire course of the trial proceedings when reviewing a claim that a defendant was not provided constitutionally adequate notice of the nature and cause of the accusation. *See, e.g., Hartman v. Lee,* 283 F.3d 190, 195 (4th Cir.2002) (rejecting habeas petitioner's claim that the Sixth and Fourteenth Amendments are satisfied "only when the defendant is notified of the elements of the charged offense *in the charging document*") (emphasis in original); *Calderon,* 59 F.3d at 1009–10 (concluding that defendant received adequate notice of the nature of the charge through the prosecutor's opening statement, the evidence introduced at trial and the trial court's description of the crime scene when ruling on his motion for judgment of acquittal at the close of the prosecutor's case); *Parker v. State,* 917 P.2d 980, 986 (Okla.Crim.App.1996) (holding that whether the charging document "gives the defendant notice of the charges against him and apprises him of what he must defend against at trial ... will be made on a case-by-case basis" in which the court "will look to the 'four corners' of the Information together with all material that was made available to a defendant at preliminary hearing or through discovery to determine whether the defendant received notice to satisfy due process requirements").

14. For purposes of my analysis, I assume that an amendment that erroneously alters the nature of the charge in violation of the Sixth Amendment would constitute structural error because it would "affect the entire conduct of the trial from beginning to end, and thus taint the framework within which the trial proceeds." *State v. Henderson,* 210 Ariz. 561, 565, ¶ 12, 115 P.3d 601, 605 (2005) (quotation omitted). *But see State v. Ring,* 204 Ariz. 534, 552, ¶ 45, 65 P.3d

915, 933 (2003) ("Most errors that we consider on appeal, even those involving constitutional error, constitute trial errors ... [in which] we consider whether the error ... was harmless beyond a reasonable doubt."); *see also Monica C. v. Ariz. Dep't of Econ. Sec.,* 211 Ariz. 89, 94, ¶ 22, 118 P.3d 37, 42 (App.2005) (noting that violations of court rules are subject to harmless-error analysis).

¶ 39 More importantly, in assessing the adequacy of Sixth Amendment notice, the determinative question is almost always whether the defendant was *actually* prejudiced. *See, e.g., Stephens v. Borg*, 59 F.3d 932, 934–36 (9th Cir.1995) (holding that failure of indictment to charge felony murder did not violate the Constitution when defendant "had five days of actual notice [prior to closing arguments] of the prosecution's intention to rely on a felony-murder theory"); *Wilson v. Lindler*, 995 F.2d 1256, 1264 (4th Cir.1993) (Widener, J. dissenting) (concluding that constructive amendment of indictment did not violate habeas petitioner's Sixth Amendment right when he received actual notice of prosecution's theory of case "at least before the jury was sworn, and almost certainly weeks before"), *adopted*, 8 F.3d 173, 175 (4th Cir.1993) *(en banc); Morrison v. Estelle*, 981 F.2d 425, 428–29 (9th Cir.1992) (defendant received adequate notice of the prosecution's felony-murder theory through testimony adduced during course of trial and when the prosecution requested a felony-murder instruction two days before closing arguments); *Hulstine v. Morris*, 819 F.2d 861, 863–64 (8th Cir.1987) (holding that "[d]ue process requirements may be satisfied if a defendant receives *actual notice* of the charges against him, even if the indictment or information is deficient"; concluding that defective indictment did not violate defendant's Sixth Amendment right because defendant was made fully aware of charges and potential punishment during plea proceedings); *see also McKaney v. Foreman ex rel. County of Maricopa*, 209 Ariz. 268, 273, ¶ 23, 100 P.3d 18, 23 (2004) (rejecting argument that Sixth Amendment requires that aggravating factors in capital case be specified in indictment: "Even though aggravating factors need not be specified in the charging document, an accused in the State of Arizona is accorded notice under the rules of criminal procedure that complies with constitutional requirements."); *cf. Sheppard v. Rees*, 909 F.2d 1234, 1236 n. 2 (9th Cir.1989) (acknowledging that "[a]n accused could be adequately notified of the nature and cause of the accusation by [means other than the primary charging document]—for example, a complaint, an arrest warrant, or a bill of particulars" because "the Constitution itself speaks not of form, but of substance").

¶ 40 The majority in *Sanders* relied on federal case law applying the "constructive amendment" doctrine, under which a defendant is conclusively determined to be prejudiced when errant jury instructions permit a defendant to be convicted of an offense that was not formally charged. 205 Ariz. at 214, ¶ 20, 68 P.3d at 440 (citing *Hunter v. New Mexico*, 916 F.2d 595 (10th Cir.1990)). There are several reasons why the doctrine should not have been invoked in *Sanders* as an exception to the requirement that a defendant claiming a Sixth Amendment notice violation show actual prejudice. First, an indictment that is *actually* amended on motion of the state pursuant to Rule 13.5(b) is the antithesis of an indictment that has been *constructively* amended during the trial. *See United States v. Daraio*, 445 F.3d 253, 259–60 (3rd Cir.2006) ("An indictment is constructively amended when, *in the absence of a formal amendment,* the evidence and jury instructions at trial modify essential terms of the charged offense in such a way that there is a substantial likelihood that the jury may have convicted the defendant for an offense differing from the offense the indictment returned by the grand jury actually charged.") (emphasis added). Second, the constructive amendment doctrine was adopted primarily in response to actions by federal prosecutors and judges that had the effect of circumventing the Fifth Amendment Grand Jury Clause. *See Stirone v. United States*, 361 U.S. 212, 217–19, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960) (finding "fatal error" when the evidence and the court's jury instructions permitted defendant to be convicted of an uncharged crime: "Although the trial court did not permit a formal amendment of the indictment, the effect of what it did was the same.... [The] variation here [between pleading and proof] destroyed the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury."); *see also United States v. Alhalabi*, 443 F.3d 605, 614 (7th Cir.2006) ("Constructive amendments are forbidden as they violate the guarantees of the Fifth Amendment."). The grand jury clause of the Fifth Amendment, however, is inapplicable to

the states. *See McKaney*, 209 Ariz. at 270, ¶ 11, 100 P.3d at 20; *State v. Ortiz*, 131 Ariz. 195, 205, 639 P.2d 1020, 1030 (1981). Third, even to the extent that the Sixth Amendment might support application of the reversible-per-se constructive-amendment rule in Arizona in certain circumstances, it is a rule that has been interpreted very narrowly by federal courts. *See, e.g., Morrison*, 981 F.2d at 428 (distinguishing *Sheppard*—repeatedly cited by *Sanders* in support of its reversible-per-se holding—as a "narrow ruling" in which the prosecutor conceded he had "ambushed the defendant with a charge of felony-murder without adequate notice"); *Stephens*, 59 F.3d at 935 (same).

¶ 41 That *Sanders* erred by conflating the Sixth Amendment and Rule 13.5(b) becomes further evident when one examines the origins of the Rule. Although the Fifth Amendment is not itself binding on the states, both it and Rule 13.5(b) can be traced to the common-law prohibition against amendments to an indictment not consented to by the grand jury. *See* B.H. Glenn & C.C. Marvel, Annotation, *Power of Court to Make or Permit Amendment of Indictment*, 17 A.L.R.3d 1181, § 2 (2004) ("At common law the requirement that an accused could be held to answer for a serious offense only on the presentment or indictment of a grand jury was generally held to preclude the amendment of an indictment by the court."). The purpose of the common-law rule was to protect citizens from having to face serious criminal charges except upon a finding of probable cause made by an impartial tribunal. *See, e.g., Ex parte Bain*, 121 U.S. 1, 10, 7 S.Ct. 781, 30 L.Ed. 849 (1887) ("If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and without which the [Fifth Amendment] says 'no person shall be held to answer,' may be frittered away until its value is almost destroyed."), *overruled on other grounds by United States v. Cotton*, 535 U.S. 625, 626, 122 S.Ct. 1781,

152 L.Ed.2d 860 (2002); *Stirone*, 361 U.S. at 218, 80 S.Ct. 270 ("The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge."); *Wood v. Georgia*, 370 U.S. 375, 390, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962) ("Historically, [the grand jury] has been regarded as a primary security to the innocent against hasty, malicious and oppressive persecution; it serves the invaluable function in our society of standing between the accuser and the accused ... to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will.").

¶ 42 The traditionally strict application of the rule frequently resulted in criminal charges being dismissed on technicalities in common-law courts. *See, e.g., Territory v. Martinez*, 5 Ariz. 55, 55–56, 44 P. 1089, 1089 (1896) (finding a fatal variance between indictment charging larceny of a steer and evidence showing that the animal was actually a spayed cow). To alleviate what came to be perceived as the unnecessary harshness of the common-law rule, many states adopted statutes or rules that disallowed claims of technical insufficiency in order to "prevent the failure of justice." *See People v. Johnson*, 104 N.Y. 213, 10 N.E. 690, 691–92 (1887); *see also, State v. Turnbaugh*, 79 Ohio St. 63, 85 N.E. 1060, 1061–62 (1908) (discussing change to common-law rule by Ohio statute providing that variance between the allegations of the indictment and evidence offered to prove them "shall not be deemed ground for an acquittal of the defendant [ ] unless ... material to the merits of the case, or ... prejudicial to the defendant"); *State v. Smith*, 153 Minn. 167, 190 N.W. 48, 52 (1922) ("If the strict rules of the common law ... were to be applied, we are not prepared to say that this indictment would stand the test; but these rules have been modified by our statutes, and we think the objections here urged are within the purview of the statutory provision that 'no indictment shall be insufficient ... by reason of a defect or imperfection in matter of form which does not tend to the prejudice of the

substantial rights of the defendant upon the merits.' ") (citation omitted).[15]

¶ 43 Likewise, Arizona enacted similar provisions that preserved the grand jury's role as a bulwark against government oppression but permitted indictments to survive despite technical but non-prejudicial flaws. Section 834 of the 1901 Penal Code provided: "No indictment is insufficient, nor can the trial, judgment or other proceeding thereon be affected by reason of any defect or imperfection in matter of form which does not tend to the prejudice of a substantial right of the defendant upon its merits." Analogous provisions were included in Arizona's first two statutory codes in 1913 and 1928. *See* Rev. Stat. Ariz. Penal Code § 944 (1913); Ariz. Rev.Code § 4983 (1928). As part of the 1939 Arizona Code, the legislature enacted § 44–748, which, in addition to containing similar language regarding the insufficiency of the indictment, explicitly authorized a trial court to: (1) "at any time cause the indictment ... to be amended" as to "any defect or imperfection in, or omission of, any matter of form only[;]" (2) "at any time cause the indictment ... to be amended in respect to any ... variance [regarding the particulars of the offense] to conform to the evidence[;]" and (3) "postpone the trial" if "the court is of the opinion that the defendant has been prejudiced in his defense upon the merits by any such defect, imperfection or omission or by any such variance ...." In deciding whether the defendant was prejudiced, the court was to "consider all the circumstances of the case and the entire course of the prosecution." § 44–748(3). To obtain relief on appeal, a defendant had to "affirmatively show[ ]" that he was "in fact prejudiced thereby in his defense upon the merits." § 44–478(4). In 1956, § 44–748 was replaced, with no substantive changes, by Criminal Rule 145. Rule 145 was in turn superseded by Rule 13.5(b), which has remained unchanged since it was promulgated in 1973. The comment to Rule 13.5(b) provides: "This standard follows existing case law." *See also State v. Singh*, 4 Ariz.App. 273, 277, 419 P.2d 403, 407 (1966) (explaining that Rule 145 "was designed to prevent the over-technical ruling" of the type represented by *Martinez* ).

¶ 44 Based on the foregoing, I believe it is clear that Rule 13.5(b) is not, as posited by *Sanders*, the procedural mechanism chosen by the supreme court to enforce the notice component of the Sixth Amendment—although it frequently serves that purpose as well. Rather, it is intended to preserve the traditional role of the grand jury as an impartial body of citizens that stand between the government and those it would accuse of serious offenses. Indeed, the common-law heritage of Rule 13.5(b) is reflected in its three-sentence structure. The first sentence sets forth the traditional common-law rule: "The preliminary hearing or grand jury indictment limits the trial to the *specific charge* or charges stated in the magistrate's order or grand jury indictment." The second sentence qualifies the common-law rule by permitting non-substantive amendments: "The charge may be amended only to correct mistakes of fact or remedy formal or technical defects, unless the defendant consents to the amendment." The third sentence automatically conforms the charging document to correspond with insubstantial variations in the evidence: "The charging document shall be deemed amended to conform to the evidence adduced at any court proceeding."

¶ 45 It follows that *Sanders'* use of a Sixth Amendment-type analysis when examining whether an amendment violated Rule 13.5(b), particularly one that results in reversal regardless of prejudice, is ill-conceived. Because Rule 13.5(b) is a procedural rule, a violation of it should be reviewable under the harmless-error doctrine. Instead, *Sanders'* prejudicial-per-se holding insulates a violation of Rule 13.5(b) from harmless-error review by elevating the Rule to the status of the Fifth Amendment Grand Jury Clause. *See Gaither v. United States*, 413 F.2d 1061,

---

**15.** One consequence of the Fifth Amendment Grand Jury Clause being inapplicable to the states is that state courts are not bound by *Ex Parte Bain*, in which the Supreme Court interpreted the Fifth Amendment as incorporating the strict common-law rule as it existed when the Bill of Rights was adopted in 1791. Accordingly, "federal cases involving indictments are of little value when evaluating the sufficiency ... of a state accusatory pleading." *Wilson*, 995 F.2d at 1264 (Widener, J. dissenting).

1072 (D.C.Cir.1969) ("Because the leading amendment case of *Ex parte Bain* rested explicitly upon the Constitution, and because it apparently excludes any notion of a non-prejudicial amendment to the indictment, the concept of harmless error has not been applied to amendments.").

¶ 46 In summary, I agree with my colleagues that Appellant was not prejudiced by the amendment. But that finding does not free us from the need to determine whether the amendment nonetheless violated Rule 13.5(b) because it changed the nature of the charged offense. For reasons I previously set forth in my dissent in *Sanders,* I do not believe the amendment here changed the nature of the offense. Accordingly, I would find that the trial court did not abuse its discretion in granting the amendment. Even assuming, however, that *Sanders'* distinct-offense analysis is correct and that the amendment to Appellant's indictment therefore violated Rule 13.5(b), I would find that the error was harmless beyond a reasonable doubt under the circumstances of this case.