662 F.2d 569
 Robert Dale GRAY, Plaintiff-Appellant,
v.
Robert RAINES, Defendant-Appellee.
 No. 79-2717.
 United States Court of Appeals,
Ninth Circuit.
 Argued March 10, 1981.
Submitted March 30, 1981.
Decided Nov. 23, 1981.
 
 Richard M. Barnett, San Diego, Cal., for plaintiff-appellant.
 William J. Schafer, Phoenix, Ariz. (argued), for defendant-appellee; Gerald R. Grant, Asst. Atty. Gen., Phoenix, Ariz., on brief.
 Appeal from the United States District Court for the District of Arizona.
 Before DUNIWAY and TANG, Circuit Judges, and ROBERT J. McNICHOLS,* District Judge.
 ROBERT J. McNICHOLS, District Judge:
 Gray was convicted in Arizona state court of second degree or "statutory" rape under A.R.S. § 13-611(B). He argues on this appeal that the Arizona statutory rape law (since repealed) under which he was convicted discriminated against males and therefore violated the Equal Protection Clause of the United States Constitution. He also argues that, because he was charged in the information only with first degree or forcible rape, his right to due process was violated when the trial judge included second degree rape in his charge to the jury. These contentions were rejected on direct appeal by the Arizona Supreme Court. State v. Gray, 122 Ariz. 445, 595 P.2d 990 (1979). They were rejected by the federal district court on Gray's petition for a writ of habeas corpus.
 Gray's contention that A.R.S. § 13-611(B) violated his equal protection rights is without merit. In the recent case of Michael M. v. Superior Court of Sonoma County, --- U.S. ----, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1981), the Supreme Court held that the California statutory rape law, on which A.R.S. § 13-611(B) was modeled, does not violate the Equal Protection Clause. Although we reject the equal protection contention, we find merit in Gray's due process argument and reverse the district court on that basis.
 In the information filed November 8, 1977, the state charged Gray with one count of first degree rape under former A.R.S. § 13-611(A) and one count of lewd and lascivious acts. Gray argues he was first notified that the state was seeking a conviction of second degree rape under A.R.S. § 13-611(B) at an in-chambers jury instruction conference near the close of the evidence. At that time Gray's advisory counsel objected to the state's request for an instruction on second degree rape:
 We object to this instruction on two grounds. First of all, I realize that Arizona state law allows you to instruct the jury on second degree rape under circumstances. And I am not convinced that that is consistent with the United States Constitution, however, because I do not feel that, going by the standard definition of what a lesser included offense is, that rape second degree is really a lesser included offense of first degree rape....
 (I)n this case the defendant has not been given notice that he has to defend against second degree rape, because the information simply charges first degree rape.
 Number Two, Mr. Gray would like to object to it because he takes the position that based on the United States Supreme Court ruling in the abortion case, that a person's age is determined from the point at which the fetus becomes viable, which I believe the United States Supreme Court said is five months, which is to say that you would add another four months normally to the age of the person, and that would throw this victim over the age of 18.
 Tr. of Trial, Vol. IV, pp. 83-84.
 The Arizona court, in an earlier decision, apparently conceded that statutory rape is not a lesser included offense within a charge of forcible rape. State v. Carrico, 116 Ariz. 547, 548, 570 P.2d 489, 490 (1977). Instead, the court construed A.R.S. 13-611 as "merely stat(ing) the different circumstances under which sexual intercourse constitutes the crime of rape." State v. Klem, 108 Ariz. 349, 350, 498 P.2d 216, 217 (1972). Because the Arizona court did not view first and second degree rape as separate offenses, it held that the state was not required to charge both degrees in the information. State v. Gray, 122 Ariz. at 447, 595 P.2d at 992. While the court did recognize that "an accused may be taken by surprise if an information charges him under one subsection of A.R.S. § 13-611 and the proof offered brings the offense under another subsection," the court concluded that "if the accused has received notice of such a possibility he is not prejudiced thereby." State v. Klem, 108 Ariz. at 350, 498 P.2d at 217. The Arizona Supreme Court in Gray held that because the alleged victim testified at a preliminary hearing before trial that she was seventeen years old, "Gray was therefore on notice at that time that another part of the rape statute was applicable." 122 Ariz. at 447-48, 595 P.2d at 992-93.
 The issue before this Court is whether Gray's conviction of statutory rape when the information charged only forcible rape violated the sixth amendment to the United States Constitution, which gives an accused the right "to be informed of the nature and cause of the accusation." The notice provision of the Sixth Amendment is incorporated within the Due Process Clause of the Fourteenth Amendment and is therefore fully applicable to the states. In Cole v. Arkansas, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644 (1948), the Supreme Court spoke of this right.
 No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal.
 Id. at 201, 68 S.Ct. at 517 (emphasis added). In another case decided the same day as Cole, the Supreme Court likewise declared that:
 A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense a right to his day in court are basic in our system of jurisprudence ....
 In re Oliver, 333 U.S. 257, 273, 68 S.Ct. 499, 507, 92 L.Ed. 682 (1948).
 Obviously, the State of Arizona may organize its criminal laws in whatever manner it chooses. The state cannot, however, use a classification scheme to circumvent the constitutional notice requirement imposed on the state when charging a defendant with an offense. The California Supreme Court made this point clear in In re Hess, 45 Cal.2d 171, 288 P.2d 5 (1955), a habeas corpus action involving a California rape statute essentially the same as the Arizona rape statute. In Hess the state took the position that the single crime of rape could be committed in six different ways, including intercourse with a person under the age of twenty-one. Although the accused had been charged with forcible rape only, the state contended the charge automatically included statutory rape and the lesser included offense of contributing to the delinquency of a minor. Justice Traynor, writing for the court, rejected this contention, impliedly finding that statutory rape had to be charged separately. He stated:A person cannot be convicted of an offense (other than a necessarily included offense) not charged against him by indictment or information, whether or not there was evidence at his trial to show that he had committed that offense.... The information charging forcible rape in the present case did not advise petitioner that he must be prepared to controvert evidence that his alleged victim was under the age of 21 years and to defend a charge of having committed an act that would tend 'to cause or encourage any person under the age of 21 years' to become a delinquent.
 Id. at 173, 288 P.2d at 7 (citations omitted).
 What makes statutory and forcible rape separate offenses for charging purposes is the fact that proof of different elements is required. The use of force is an element of first degree rape, while the age of the victim is an element of second degree rape. Neither element is common to both degrees. Because first and second degree rape are distinct offenses, and second degree rape is not an included offense, the state was obligated to comply with the Sixth Amendment notice requirement when bringing a second degree rape charge. In the instant case, the state did not meet its obligation.
 The failure of the prosecution to give Gray notice in the information of its intent to charge second degree rape is alone sufficient to require a reversal of his conviction. This Court has previously held that a violation of the Fifth Amendment by convicting a defendant of a crime not charged in an indictment constitutes per se reversible error. United States v. Stewart Clinical Laboratory, Inc., 652 F.2d 804, 807 (9th Cir. 1981); see Stirone v. United States, 361 U.S. 212, 219, 80 S.Ct. 270, 274, 4 L.Ed.2d 252 (1960); United States v. Beeler, 587 F.2d 340, 343 (6th Cir. 1978). Thus, a Sixth Amendment violation must also be per se error since the purposes behind the Fifth Amendment requirement of a grand jury indictment and the Sixth Amendment right of an accused to be informed of the nature and cause of the accusations are identical: (1) to apprise the defendant what he must be prepared to defend against; and (2) to protect the defendant against double jeopardy. Calley v. Callaway, 519 F.2d 184, 226 (5th Cir. 1975); United States v. Sanchez, 508 F.2d 388, 395 (5th Cir. 1975). Moreover, the Supreme Court has held other due process rights associated with a fair trial to be so basic that their infraction can never be treated as harmless error. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (right to counsel); Payne v. Arkansas, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958) (coerced confession); Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (impartial judge). Given the Supreme Court language in Cole and Oliver, supra, indicating that the right to notice of a charge is basic and the most clearly established due process right of an accused in a criminal proceeding, the conclusion is inescapable that a denial of this right is also a per se violation.
 Although the objection raised by Gray might be viewed by some as technical, it strikes an area of substantial constitutional sensitivity that must be protected. The Supreme Court has held that
 (c)onstitutional safeguards for the protection of all who are charged with offenses are not to be disregarded in order to inflict merited punishment on some who are guilty.
 Ex Parte Quirin, 317 U.S. 1, 25, 63 S.Ct. 1, 9, 87 L.Ed. 3 (1942). In a case similar to the instant one, the Vermont Supreme Court reversed a conviction solely because the information was facially inadequate to provide proper notice. The court noted the technical nature of the objection raised but reasoned that
 the (accused) is entitled to have an information 'reasonably indicate the exact offense so as to enable the (accused) to make intelligent preparation of his defense.' (citation omitted)
 ... The form of the charge is the responsibility of the prosecuting authority. It is not unjust to hold that authority strictly accountable for substantive shortcomings in its pleadings.
 To transmute the test to a subjective issue of the respondent's understanding of a defective charge would place the constitutional purpose in danger. Authoritarian caprice, against which the whole structure of constitutional law was erected as a barrier, could begin again to outflank our objectives of justice and fair dealing.
 
 
 1
 State v. Woodmansee, 124 Vt. 387, 205 A.2d 407, 409 (1964).[1]
 
 
 2
 In Watson v. Jago, 558 F.2d 330 (6th Cir. 1977), the Sixth Circuit, in finding that the state trial court had violated the Sixth Amendment right to notice, held:
 
 
 3
 To allow the prosecution to amend the indictment at trial so as to enable the prosecution to seek a conviction on a charge not brought by the grand jury unquestionably constituted a denial of due process by not giving appellant fair notice of criminal charges to be brought against him.... As a matter of law, appellant was prejudiced by the constructive amendment.
 
 
 4
 Id. at 339 (footnote and citations omitted) (emphasis supplied).
 
 
 5
 The facts in the instant case demonstrate that Gray's conviction significantly violated that principle of due process. Gray's entire defense to the forcible rape charge was that the sexual relations were consensual. This defense gained Gray an acquittal on the forcible rape charge, but as was pointed out in the dissent to the Arizona Supreme Court's opinion affirming Gray's statutory rape conviction,
 
 
 6
 different defenses are involved, and a defendant may virtually convict himself of statutory rape if he is surprised by a statutory rape instruction after presenting a consent defense to a forcible rape charge.
 
 
 7
 State v. Gray, 122 Ariz. at 450, 595 P.2d at 995 (Justice Gordon, dissenting). This is precisely what occurred here. The state was permitted to wait until Gray had put on evidence of consent as a defense to the charged offense, and then use that evidence to convict Gray of the second offense. Such a procedure is repugnant to the concept of due process and fundamental fairness.[2]
 
 
 8
 For these reasons, a reversal is required based solely on the inadequacy of the charging information.
 
 
 9
 Even if the defendant's actual knowledge of the victim's age is considered, the conviction still must be overturned. The Arizona Supreme Court concluded that Gray had notice "that another part of the rape statute was applicable." Id. at 448, 595 P.2d at 993. This is a basic flaw in the state court's decision. True, Gray had notice of the age of the prosecuting witness, and, presumptively, notice that he could have been charged with second degree rape. He did not, however, have notice that he was being charged with that offense. In fact, the prosecutor in his opening statement at trial told the jury that the state would prove beyond a reasonable doubt that the complainant "was forcibly raped by the defendant." (Tr. of Trial, Vol. I, p. 43). There was no reference whatsoever to the crime of statutory rape until the instruction conference near the close of the evidence.
 
 
 10
 Moreover, before we could uphold the conviction on the theory that the failure to properly charge did not prejudice Gray, we would have to find beyond a reasonable doubt that the error was harmless. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Applying that standard to the present case, we cannot say beyond a reasonable doubt that the defendant was not surprised and thereby prejudiced by the second degree rape instruction. First, as was pointed out above, Gray's consent defense to the first degree charge effectively convicted him of the second degree offense. It is not reasonable to conceive that Gray (who was acting pro se with assigned counsel), in investigating and preparing his defense, would have proceeded as he did if he had been charged with, or had known he would be required to meet, the charge of second degree rape. Second, while Gray did make an argument during trial regarding the age of the victim (which would have been relevant to a statutory rape defense) (Tr. of Trial, Vol. I, p. 9; Vol. IV, pp. 89, 141-42), it is plausible that Gray was attempting to show that the victim was of sufficient age, which, when coupled with the other evidence, would persuade the jury that the sexual relations were consensual and not the result of force.
 
 
 11
 The ruling of the Court today applies only to the conviction for second degree rape; the conviction for lewd and lascivious acts is not disturbed. The writ of habeas corpus is granted and this case is remanded to the District Court for action consistent with this opinion.
 
 
 12
 REVERSED AND REMANDED.
 
 TANG, Circuit Judge, specially concurring:
 
 13
 I concur that A.R.S. § 13-611(B) does not violate Gray's equal protection rights. See Michael M. v. Superior Court of Sonoma County, --- U.S. ----, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1981). I also concur that the conviction for second degree rape cannot stand and agree that the writ of habeas corpus as to that charge should be granted. I do not, however, go as far as my brother McNichols and hold the failure to charge second degree rape in the information a per se sixth amendment violation. Although the information may be the primary charging paper, an accused who, for example, is notified of the charges by complaint and arrest warrant or by a bill of particular would be adequately apprised of the accusations for due process purposes. On the facts of this case, however, I find Gray's conviction on the second degree rape charge a violation of due process. The question is whether the accused was taken by surprise. My brother Duniway concludes on the record that the accused was shown to have adequate notice of the possible charge against him. I disagree.
 
 
 14
 The accused's probing as to the age of the victim may have been relevant to a defense against the second degree charge but it is equally relevant to showing the victim to be of a sufficient age to give consent as a defense against the forcible (first degree) rape charge. Thus it seems to me fundamentally unfair and a denial of due process that in presenting a defense of consent to a forcible rape charge, a defendant virtually convicts himself of a statutory rape with which he is not formally charged and as to which the prosecutor during trial is ostensibly not trying the defendant. Indeed, the prosecutor in his opening statement told the jury that the state would prove beyond a reasonable doubt that the complainant "was forcibly raped by the defendant." There was no intimation of a second degree charge until both sides had rested and instructions were to be given. That was the first time that the second degree charge was explicitly stated. The accused was ambushed.
 
 
 15
 DUNIWAY, Circuit Judge (concurring and dissenting):
 
 
 16
 I concur in the holding that A.R.S. 13-611.B. does not violate Gray's right to equal protection. Michael M. v. Superior Court of Sonoma County, --- U.S. ----, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1981), is squarely in point. I cannot agree, however, that Gray's conviction of "statutory" rape under § 13-611.B. violated his right to due process.
 
 
 17
 A.R.S. § 13-611, as in effect when Gray was charged and convicted, provided, in pertinent part:
 
 
 18
 Definition: Degrees.
 
 
 19
 A. Rape in the first degree is an act of sexual intercourse accomplished with a female, not the wife of the perpetrator, under any of the following circumstances:
 
 
 20
 2. Where the female resists, but her resistance is overcome by force or violence.
 
 
 21
 3. Where the female is prevented from resisting by threats of immediate and great bodily harm, accompanied by apparent power of execution...
 
 
 22
 B. Rape in the second degree is an act of sexual intercourse with a female not the wife of the perpetrator, under the age of eighteen years, under circumstances not amounting to rape in the first degree.
 
 
 23
 Gray was charged with violating § 13-611.A. Subsection B. was not mentioned in the information.
 
 
 24
 Gray's position is that "statutory" rape (subsec. B.) is not an offense necessarily included in forcible rape (subsec. A.), because a fact that the victim is under the age of 18 is not an element of forcible rape, but is an element of "statutory" rape. Therefore, he says, charging him with forcible rape does not tell him that he can be convicted, under that charge, of statutory rape. This is essentially the position adopted in Judge McNichols' opinion.
 
 
 25
 However, it was settled law in Arizona at the time Gray was charged that there was only one crime of rape: " § 13-611 defining rape did not create separate crimes, but 'merely set this particular form of rape (Subsection B, second degree) apart from the other five (Subsection A, first degree) for the obvious purpose of allowing a different penalty to be assessed for its violation.' " State v. Klem, 1972, 108 Ariz. 349, 350, 498 P.2d 216, 217 (citations omitted). The Arizona Supreme Court held that "(w)hile it is, of course, possible that an accused may be taken by surprise if an information charges him under one subsection of A.R.S. § 13-611 and the proof offered brings the offense under another subsection, if the accused has received notice of such a possibility he is not prejudiced thereby." Id.; State v. Carrico, 1977, 116 Ariz. 547, 548, 570 P.2d 489, 490; State v. Gray, 1979, 122 Ariz. 445, 448, 595 P.2d at 992-993. We are, of course, bound by the Arizona court's construction of Arizona'sstatute.
 
 
 26
 I see no deprivation of due process in the position taken by the Arizona court. Where the lesser offense is necessarily included in the greater, proof of the greater also proves the lesser. It is then not necessary to charge the lesser expressly because the law which defines the elements of the offenses tells the defendant that he can be found guilty of the lesser upon proof of the elements of the greater. I know of no case that holds that it must be shown that the particular defendant actually knew that he could be convicted of the lesser offense. The lesser offense rule is one of law; notice to the defendant that the greater charged offense includes the lesser is presumed, because the defendant is presumed to know the law, and so due process is satisfied.
 
 
 27
 The case at bar is analogous. Proof of forcible rape necessarily proves every element of "statutory" rape, save one the victim's age. Thus, a charge of forcible rape necessarily charges every element of "statutory" rape, except the victim's age. And if the defendant knows, when he goes to trial, that the victim may be under eighteen, he is as well off, from the standpoint of notice, that is, of due process, as is one who may be convicted of a lesser included uncharged offense. It will not do to say that he does not know whether the state will try to prove the victim's age. Her age is relevant in a forcible rape case, because it is at least arguable that a young girl can be more easily forced or frightened into submission than a mature woman can be. All that the Arizona court has added to the necessarily included defense doctrine is a requirement that the defendant actually know, rather than be presumed to know, that the victim may be proved to be under age. I see nothing unconstitutional, no deprivation of due process, in that holding.
 
 
 28
 The record supports the Arizona court's conclusion that Gray had knowledge of the possibility that the proof would bring the offense under subsection B. Gray argues that he first realized that he might be convicted of second degree or statutory rape under A.R.S. § 13-611.B. at an in-chambers conference on jury instructions near the close of his trial, and the majority accepts that argument. The record, however, does not support it. On the contrary, the record shows that Gray had the requisite knowledge from the beginning. I do not rely on imputing notice to Gray simply because of the settled state of Arizona law on this matter, by analogy to the "necessarily included offense" rule. The victim testified at the preliminary hearing and then at trial that she was seventeen years old. At the start of the trial and before the selection of a jury, and just after the trial judge stated that "Count I is Rape First Degree and Count II Lewd and Lascivious acts," Vol. E, p. 8, Gray made the following statement to the court: "There is a point of law I'd like entered, Your Honor, and that is that the Supreme Court of the United States ruling involving the life of a human being, which states that you are legally alive when you are in your mother's womb after, I believe, it's 16 weeks, Your Honor." Vol. E, p. 9. The point of this imaginative argument, as was made clear in Gray's later objection to the second degree instruction to the jury, was to fend off a conviction for second degree rape. Clearly, Gray was aware before the trial began that he faced the possibility of such a conviction.
 
 
 29
 Moreover, in the course of trial and before the in-chambers conference in which Gray now claims that he first learned of the second degree rape charge, Gray probed the matter of the victim's age. In his cross-examination of the victim's sister, he asked the following:
 
 
 30
 Q. And let's see. This is '78. Next year, '79. (The victim) would be 20 years old, wouldn't she?
 
 
 31
 A. No.
 
 
 32
 Q. She won't?
 
 
 33
 A. 19.
 
 
 34
 Q. She was born in '59. Next year in '79, she'll be 20?
 
 
 35
 A. Yes, yes. I'm sorry. Vol. F. p. 157.
 
 
 36
 At the conference in chambers on the jury instructions, Gray's advisory counsel objected to the state's request for an instruction on second degree rape:
 
 
 37
 We object to this instruction on two grounds. First of all, I realize that Arizona state law allows you to instruct the jury on second degree rape under circumstances. And I am not convinced that this is consistent with the United States Constitution, however, because I do not feel that, going by the standard definition of what a lesser included offense is, that rape second degree is really a lesser included offense of first degree rape....
 
 
 38
 (I)n this case the defendant has not been given notice that he has to defend against second degree rape, because the information simply charges first degree rape.
 
 
 39
 Number Two, Mr. Gray would like to object to it because he takes the position that based on the United States Supreme Court ruling in the abortion case, that a person's age is determined from the point at which the fetus becomes viable, which I believe the United States Supreme Court said is five months, which is to say that you would add another four months normally to the age of the person, and that would throw this victim over the age of 18. Vol. H, p. 83-84.
 
 
 40
 Finally, it is apparent from the objection to the second degree instruction made by Gray's advisory counsel that Gray's lawyer understood that Arizona law permitted a second degree instruction from the moment the victim testified to her age at the preliminary hearing.
 
 
 41
 In short, statements made by Gray's advisory counsel and by Gray both before and during trial make clear that Gray had actual notice of the second degree rape charge. Gray had "notice and meaningful opportunity to defend," Jackson v. Virginia, 1979, 443 U.S. 307, 314, 99 S.Ct. 2781, 2786, 61 L.Ed.2d 560 and I can find no violation of due process in these circumstances. See Goodloe v. Parratt, 8 Cir., 1979, 605 F.2d 1041, 1046 ("If a defendant is actually notified of the charge due process notice requirements may be met, even if the information is deficient.") Cf. United States v. United Mine Workers of America, 1942, 330 U.S. 258, 295-300, 67 S.Ct. 677, 696-699, 91 L.Ed. 884 (actual notice of criminal contempt suffices).
 
 
 42
 I would affirm.
 
 
 
 *
 Honorable Robert J. McNichols, Chief Judge, United States District Court for the Eastern District of Washington, sitting by designation
 
 
 [1]
 A number of states have had occasion recently to approach this issue. The results have been remarkably similar. Addis v. State, Ind., 404 N.E.2d 59, 62 n.2 (1980) ("It would be fundamental error to convict a criminal defendant upon a charge never made."); State v. Booker, La., 385 So.2d 1186, 1191 (1980) ("(N)otice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge" are constitutionally mandated.); State v. Handley, --- Mo. ----, 585 S.W.2d 458, 461 (1979) ("A court is without jurisdiction to try a person for an offense unless the offense has been charged by information or indictment.")
 
 
 [2]
 There is, as noted by the dissent, some support for the proposition that the insufficiency of an information may not be fatal if the accused received actual knowledge of the specific crime with which he is charged. Goodloe v. Parratt, 605 F.2d 1041, 1046 (8th Cir. 1979). This unfortunate dicta has been ignored by subsequent decisions which have cited Goodloe. See generally United States v. Bonilla, 648 F.2d 1373, 1385-86 (1st Cir. 1981); United States v. Parisien, 515 F.Supp. 24, 26 (D.C.N.D.1981). Indeed, the Goodloe court itself, once having made the observation cited by the dissent, did not seem quite certain of its relevance, for the opinion went on to state:
 The lack of pretrial notice by information was aggravated by uncertainty during trial over what specific violation the prosecution would prove. The State urged, as late as the conference on instructions, that the jury could find from its proof that the underlying violation was (any of the four separate crimes) even though the first three were never mentioned in a complaint, arrest warrant, or information.
 The mid-trial shift ... illustrates the prejudice inherent in an information which fails to specify an essential element of the offense. The defendant is given insufficient notice to prepare a defense, he proceeds to trial with factual issues undefined, and the prosecution is left "free to roam at large to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal."
 605 F.2d at 1046 (emphasis added) (citation omitted).