Filed 9/20/16  P. v. Charles CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H041098 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1352393) |
| v. | |
| MARIO XAVIER CHARLES, | |
| Defendant and Appellant. | |

Following a jury trial, defendant Mario Xavier Charles was convicted of criminal threats (Pen. Code, § 422),[1] misdemeanor petty theft (§§ 484, 488), misdemeanor tampering with a vehicle (Veh. Code, § 10852), and attempted vehicle theft (§ 664, Veh. Code, § 10851).  The trial court sentenced defendant to a total term of three years in prison.  On appeal, he argues the trial court abused its discretion when it permitted the prosecution to amend the information to include a count of attempted vehicle theft.  He also argues the court erred when it failed to sua sponte instruct on attempted criminal threats, the lesser included offense of criminal threats.  We find no error and affirm.

**BACKGROUND**

1. *The Information*

On May 16, 2013, the Santa Clara County District Attorney's Office filed an information charging defendant with second degree robbery (§§ 211, 212.5, subd. (c)), criminal threats (§ 422), petty theft (§§ 484, 488), and tampering with a vehicle

---

[1] Unspecified statutory references are to the Penal Code.

(Veh. Code, § 10852). It was further alleged as to the first two counts that defendant had used a deadly and dangerous weapon during the commission of the offense (§ 12022, subd. (b)(1)) and that he had served a prior prison term (§ 667.5, subd. (b)). On March 11, 2014, the district attorney's office filed a first amended information that withdrew the petty theft count. Defendant's jury trial commenced the following day.

2. *Trial*

a. **Prosecution's Case**

Early in the morning of March 20, 2013, Erin Trevino went to her car, which was parked in the driveway of her home, so she could drive herself to the gym. It was still dark outside, and she did not see anybody when she went toward her car. She did, however, hear a grunting noise and someone say "come on." From her front door, she could see that her car's driver side door was open. Erin went back inside the house, woke up her husband, Louie, and told him that she thought someone was breaking into her car.[2]

Erin and Louie went to the car together. Whoever was at the car had already left. Erin and Louie did not see anybody in the car's vicinity. Erin noticed that the driver's side door was still open, the dome light in the car was on, some of the car's interior compartments were open, and it smelled like someone had been inside. Erin kept items like CD cases and chargers for her electronic devices in the compartments. The items were now missing.

Erin decided she still wanted to go to the gym. She tried to insert her key into the car's ignition, but there was something jammed inside of it that prevented her from doing so. Erin and Louie went back inside the house and decided to call the police.

Some time later, Erin heard someone close her car door. She went to her bedroom window and saw that her car's trunk was now open. Erin kept a red bag in her trunk.

---

[2] Since Erin and Louie share the same surname, we refer to them by their first names.

2

When she looked outside, she could not see the person at the trunk, because her view was blocked by the trunk. Erin called her husband over and told him that whoever had broken into the car the first time was back. Louie went outside and saw defendant rummaging through the trunk. He yelled at defendant, and defendant ran. Louie began to chase him. Erin called the police again.

Louie chased defendant down about seven to eight houses. At that time, the distance between him and defendant had whittled down to approximately 10 feet. Defendant grabbed a bike that was leaning against a fence, dragged it with him, and attempted to jump on top of it. By that time, Louie had caught up with him. Defendant dropped the bike, and Louie saw a red bag, which he recognized as the red bag that his wife kept in the trunk of her car.

Defendant continued to run from Louie. He reached a fence and attempted to climb over it but was unable to do so. Louie caught up with him a second time. Defendant turned around, and Louie asked him what he was doing. Both Louie and defendant put their hands up like they were about to fight. Louie saw defendant reach into his pocket and retrieve something that sounded like keys.[3] Louie saw defendant playing with the keys in his hands, as if he was trying to open something that was jammed. Defendant said that he was going to stab Louie. Louie got nervous at that point and feared for his safety, because he did not want to get stabbed. Louie hesitated, and defendant ran off again toward the bike. Louie followed defendant to keep an eye on him. He was no longer sprinting after defendant, because defendant had said that he was going to stab him. Before defendant reached the bike, police officers arrived on the

---

[3] During trial, Louie testified that defendant had pulled out a knife. After further questioning, Louie explained that he saw defendant retrieve something from his pocket, which sounded like keys. It was dark outside, and he could not describe the item that defendant pulled out.

scene, and Louie waved them down. After police arrested defendant, they showed Louie that defendant had a retractable blade on his keychain.

### b. **Defendant's Motion for Judgment of Acquittal**

After the prosecution rested its case, defendant filed a motion for a judgment of acquittal under section 1118.1 as to the count of second degree robbery and to the weapon enhancement attached to that count. The trial court granted defendant's motion for a judgment of acquittal as to the second degree robbery count and to the weapons enhancement attached to the count. The court then substituted a count of the lesser included offense of petty theft, after finding substantial evidence in support of the crime.

### c. **Defendant's Case**

Defendant testified on his own behalf. He explained that he had been visiting his cousin, who lived in the same neighborhood as Erin and Louie, the night of the crime. He went around the neighborhood looking for cars to burglarize. Erin's car was unlocked, so he opened the driver side door.

He was drunk at the time and could not remember what he did the first time he came upon the car. He did not remember opening the compartments in Erin's car and did not recall sticking anything into her car's ignition. He had not started a car before by sticking something into the ignition, but he believed that he may have heard about cars getting started that way. At the time, he may have been looking for a spare key. Defendant said he "could have" driven the car away. He left when he started to feel paranoid.

Defendant walked around the neighborhood and saw Erin's car again. It was dark, and he did not realize that it was the same car he had already tried to burglarize. He noticed the car's light was on so he went to the car again. The trunk was open, so he went to the trunk and began looking through it. At that time, Louie came out of the house and yelled at him. Defendant became afraid, so he ran off down the street.

4

As he was running, defendant came across a bike. The bike was not his, but he attempted to ride it away. He could not get on top of the bike, so he dropped it and continued to run. He ran up to a fence and tried to jump over it. He was unsuccessful, and Louie managed to catch up to him. Defendant and Louie circled each other, and Louie looked like he was ready to fight. Defendant put his arms up in a defensive stance, reached into his pocket, and pulled out a keychain that had a razor blade on it. Defendant did not show Louie what he had in his hand, but he told Louie that he had a knife. When defendant initially pulled out the keychain, the razor blade was closed and not exposed. Defendant said that he pulled the keychain out as a "surprise, not [as] a scare tactic." Defendant was fairly certain that he kept the blade closed.

Eventually, defendant saw an opportunity to run and fled from Louie again. He came across the police and was later arrested.

d. **The Amendment of the Information**

Following defendant's testimony the defense rested. The People then moved to amend the information to add a count of attempted auto theft (§ 664; Veh. Code, § 10851). The People opined that defendant was on notice of the possibility of this charge, based on the testimony during the preliminary hearing and his own testimony about the circumstances of the offense. Defendant objected to the proposed amendment on the basis that it would violate his constitutional right to due process and would be made in violation of section 1009, because the preliminary hearing testimony did not support the additional charge.

The court granted the People's motion, finding that the amendment would not prejudice defendant, and defendant should not have been surprised by the amendment based on the testimony provided during the preliminary hearing.

3. *Verdict and Sentencing*

On March 21, 2014, the jury found defendant guilty of all four counts. It also found that the weapons enhancement attached to the count of making a criminal threat (§ 422) not to be true.

On May 23, 2014, the trial court sentenced defendant to three years in prison for criminal threats (§ 422) to run concurrently with the sentence of 18 months in prison for attempted vehicle theft (§ 664, Veh. Code, § 10851). The court sentenced defendant to concurrent terms of six months in county jail for the remaining misdemeanor counts of tampering with a vehicle (Veh. Code, § 10852) and petty theft (§§ 484, 488). The court struck defendant's one-year enhancement for his prior prison term under section 1385.

## DISCUSSION

Defendant raises two arguments on appeal. First, he argues the trial court erred when it granted the People's motion to amend the information to include a count of attempted vehicle theft. Second, he argues the court erred when it failed to sua sponte instruct on the lesser included offense of attempted criminal threats.

1. *Motion to Amend the Information*

After defendant testified and the defense rested, the People moved to amend the information to add a count of attempted vehicle theft (§ 664; Veh. Code, § 10851). The trial court granted the People's motion over defendant's objection. On appeal, defendant argues the court abused its discretion, because he had insufficient notice of the amendment, which deprived him of his due process rights.

a. **Overview and Standard of Review**

"Due process requires that 'an accused be advised of the charges against him so that he has a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial.' " (*People v. Graff* (2009) 170 Cal.App.4th 345, 360 (*Graff*).) Under sections 739 and 1009, unless the magistrate makes factual

6

findings to the contrary, the prosecution can move to amend the information after a preliminary hearing up to and including the close of trial to allege any charge or enhancement shown by evidence provided at the preliminary hearing, if the new crime is transactionally related to the crimes that defendant is already held over to answer. (*People v. Superior Court* (*Mendella*) (1983) 33 Cal.3d 754, 764, superseded by statute on another point as stated in *In re Jovan B.* (1993) 6 Cal.4th 801, 814, fn. 8; *Graff*, *supra*, at p. 361.)  An amendment may be permitted if it does not prejudice the defendant's substantial rights, in which event the trial court may grant a reasonable postponement. (§ 1009.)

"[E]ven where the prosecution complies with the necessary procedures and no specific prejudice is shown, appellate courts are compelled to reverse convictions where substantial evidence was presented at trial that did not correspond to the charges established at the preliminary hearing." (*Graff*, *supra*, 170 Cal.App.4th at p. 362.)  A conviction on a charge added to the accusatory pleading cannot stand if there was no evidence of the particulars of the charge in the preliminary hearing.  (*People v. Burnett* (1999) 71 Cal.App.4th 151, 176-177.)

We review the trial court's order granting the amendment of the information to include the new charge of attempted vehicle theft for an abuse of discretion.  (*People v. Arevalo-Iraheta* (2011) 193 Cal.App.4th 1574, 1581 (*Arevalo-Iraheta*).)

b. **The Trial Court Did Not Abuse Its Discretion by Permitting the Amendment**

Defendant claims the trial court erred when it permitted the People to amend the information to allege a new charge of attempted vehicle theft (§ 664, Veh. Code, § 10851).  Defendant argues the court abused its discretion when it concluded that Louie's testimony at the preliminary hearing—that he saw someone rummaging through the trunk of his wife's car, and he saw that something was jammed inside the car's

7

ignition—provided sufficient notice to defendant of the new charge. Primarily, defendant argues the amendment was improper for two reasons: attempted vehicle theft is not a lesser included offense of any of the other charged offenses and none of the accusatory pleadings provided notice to defendant.

When permitting the amendment, the trial court relied, in part, on *Arevalo-Iraheta*. In *Arevalo-Iraheta*, the People initially charged the defendant with five counts of aggravated sexual assault of a child under the age of 14. (*Arevalo-Iraheta*, *supra*, 193 Cal.App.4th at p. 1581.) Prior to the close of their case, the People moved to add five additional counts of lewd and lascivious behavior with a child. (*Id*. at pp. 1581-1582.) Defendant objected. The trial court found that an amendment was proper, and the appellate court affirmed. (*Id*. at p. 1584.) The appellate court noted that evidence of the substance of the additional counts had been introduced at the preliminary hearing. (*Id*. at p. 1583.) And the additional counts were all lesser included offenses of the charged against him in the amended information. (*Id*. at p. 1584.)

We agree with defendant that *Arevalo-Iraheta* is distinguishable in some respects. In part, the *Arevalo-Iraheta* court found the defendant had notice of the additional counts, because they were lesser included offenses of the charges against him in the information, and the preliminary hearing provided evidence supporting the additional counts. Here, the crime of attempted vehicle theft is not a lesser included offense of any of the other counts charged in the information (second degree robbery, criminal threats, and petty theft).

Nonetheless, we disagree with defendant that the amendment was a surprise. Defendant focuses on the lack of notice provided by the charging information, because the accusatory pleading did not allege that defendant took or attempted to take the car. The People, however, argue that defendant should have been on notice of this charge, because of Louie's testimony during the preliminary hearing. We agree with the People's

8

position. As we noted earlier, " 'California law under sections 739 and 1009 and relevant cases permit amendment of the information to add charges or enhancements which are supported by actual evidence at the preliminary hearing, provided the facts show due notice by proof to the accused.' " (*People v. Superior Court* (*Mendella*), *supra*, 33 Cal.3d at p. 764.) In other words, California law permits an amendment to include new charges even if the new charges are not encompassed within the original accusatory pleadings and are not a lesser included offense of the previous charges.

Louie testified during the preliminary examination. He said that "[s]omebody had broken into [his] wife's car and [had] jammed the ignition trying to steal it, and there [were] some items missing." He then described how he saw defendant rummaging through the trunk of his wife's car, and gave chase after defendant tried to run away. Louie later admitted during cross-examination that he did not personally observe defendant jam the ignition in his wife's car. He also did not see who jammed the ignition. Louie, however, testified that before defendant was seem rummaging through the trunk, the item that was jammed into the ignition had a nut welded to the end of it. After defendant's arrest, the item was still there, but the nut had been broken off. A reasonable inference is that whoever was rummaging through the trunk had fiddled with the item in the ignition.

We note that the evidence supporting the charge of attempted vehicle theft based on the testimony provided by Louie at the preliminary hearing was not particularly strong. The evidence required to hold a defendant to trial, however, need not be unequivocal. "The standard is whether there is some rational ground to assume the possibility that an offense has been committed and the accused is guilty of it." (*People v. Superior Court* (*Kneip*) (1990) 219 Cal.App.3d 235, 238; *People v. Alonzo* (1993) 13 Cal.App.4th 535, 538 [the standard is "whether the magistrate, acting as a person of ordinary prudence, could conscientiously entertain a reasonable suspicion that the

9

defendant committed the crime charged"].) When considering the amendment, the trial court specifically looked at portions of Louie's testimony from the preliminary hearing and concluded there was sufficient evidence and notice to defendant of the charge. Based on Louie's preliminary hearing testimony, we do not believe this was an abuse of discretion.

Furthermore, given that defendant had sufficient notice of the charge due to the evidence presented at the preliminary hearing, his argument that the notice deprived him of due process fails. Defendant's reliance on *Gray v. Raines* (1981) 662 F.2d 569 (*Gray*) is misplaced. There, the defendant was convicted of statutory rape even though the information charged him only with forcible rape. (*Id*. at p. 571.) *Gray*, a case from the Ninth Circuit, analyzed Arizona law. It is not binding authority. It is also distinguishable.

In *Gray*, the Ninth Circuit noted that the state waited to amend the information until Gray had put on evidence of consent as a defense to the charged offense. (*Gray*, *supra*, 662 F.2d at p. 573.) It then used that evidence to convict Gray of the second offense of statutory rape. (*Ibid*.) The Ninth Circuit commented that this "procedure [was] repugnant to the concept of due process and fundamental fairness." (*Ibid*.) *Gray*, however, did not analyze or discuss whether due process is violated if a defendant—with notice of the new charge based on evidence provided during the preliminary hearing—is subsequently deprived of due process if the information is amended. We do not believe it is. In California, "a preliminary hearing transcript affording notice of the time, place and circumstances of charged offenses ' "is the touchstone of due process notice to a defendant." ' " (*People v. Pitts* (1990) 223 Cal.App.3d 606, 908, superseded by statute on other grounds as stated in *People v. Levesque* (1995) 35 Cal.App.4th 530, 537.)

In part, defendant argues that his due process rights were violated, because the amendment was brought after he had rested his defense and after he had already testified.

10

It is apparent that his testimony at trial supported his conviction for attempted vehicle theft. Defendant testified that he had been inside the car the first time, he may have been looking for a spare key, and he "could have" driven the car off. He also testified that he may have heard that a car can be started by jamming something into the ignition. He admitted that although he could not recall jamming the ignition, it sounded like something that he might do. However, as we already noted, defendant should have already been on notice of the new charges when he testified at trial and when he prepared his defense based on the evidence adduced at the preliminary hearing.[4] And although he objected to the amendment and claimed that he would have conducted additional discovery had he known of the charges, he did not request a continuance so he could conduct an investigation and did not ask if he could reopen the case to introduce further evidence.

Based on the foregoing, we do not find that the court abused its discretion. Even if the attempted vehicle theft charge was not a lesser included offense of the other charges defendant faced, evidence of the offense given at the preliminary hearing renders the amendment proper. (See *People v. McCoy* (2013) 215 Cal.App.4th 1510, 1531-1535; *People v. Hall* (1979) 95 Cal.App.3d 299, 314; *People v. Villagren* (1980) 106 Cal.App.3d 720, 724-725.)

2. *Instructional Error*

Next, defendant argues the court erred and his conviction for criminal threats must be reversed, because the court failed to sua sponte instruct on the lesser included offense

---

[4] On appeal, the People argue that defendant should also have been on notice of the charge of attempted vehicle theft based on his own testimony at trial. We do not believe that defendant's trial testimony should be considered when determining if he had sufficient notice. If the preliminary hearing lacked evidence of the new charge, defendant could not have been given sufficient notice and his due process rights would have been violated.

11

of attempted criminal threats. Defendant argues there was substantial evidence that his threats did not cause Louie to be in sustained fear for his own safety.

a. **Overview and Standard of Review**

" ' "It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." [Citation.] That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged.' " (*People v. Breverman* (1998) 19 Cal.4th 142, 154 (*Breverman*).)

"We apply the independent or de novo standard of review to the failure by the trial court to instruct on an assertedly lesser included offense. [Citation.] A trial court must instruct the jury sua sponte on a lesser included offense only if there is substantial evidence, ' "that is, evidence that a reasonable jury could find persuasive" ' [citation], which, if accepted, ' "would absolve [the] defendant from guilt of the greater offense" [citation] *but not the lesser*.' " (*People v. Cole* (2004) 33 Cal.4th 1158, 1218.)

b. **Sua Sponte Instruction Was Unnecessary**

Defendant argues that an instruction on attempted criminal threats was required, because the circumstances of his offense are similar to the offense contemplated in *People v. Toledo* (2001) 26 Cal.4th 221 (*Toledo*). In *Toledo*, a husband argued with his wife after he went to pick her up after work. After arriving at home, the dispute escalated. The husband threw a telephone, tossed a chair across the room, and punched a hole through a door. (*Id*. at p. 225.) The husband then told the wife that " 'death [was] going to become [her] tonight,' " and that he was going to kill her. (*Ibid*.) The wife said

12

she did not care and walked away. Later, the husband approached his wife with a pair of scissors and plunged the scissors toward her neck, stopping inches from her skin. (*Ibid*.) Afterwards, the wife went to a neighbor's apartment, crying and appearing frightened. Later, the wife told an investigating officer that she was afraid that her husband was going to kill her. (*Ibid*.) At trial, she denied being in any fear of her husband that night. (*Ibid*.) Her husband was subsequently convicted of attempted criminal threats and found not guilty of making criminal threats. He appealed, arguing that there was no such crime as attempted criminal threats. (*Id*. at p. 226.)

In its discussion, the *Toledo* court first reviewed the applicable elements of making a criminal threat (§ 422). (*Toledo*, *supra*, 26 Cal.4th at pp. 227-228.) The prosecution must establish: "(1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat—which may be 'made verbally, in writing, or by means of an electronic communication device'—was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." (*Ibid*.) *Toledo* also considered the law of criminal attempt (§§ 664, 21a). A defendant can be convicted of an attempted crime if a he or she acts with the required specific intent to engage in conduct or to bring about the consequences of the attempted crime and performs an act that goes beyond mere perpetration. (*Toledo*, *supra*, at pp. 229-230.)

13

Based on the foregoing, the *Toledo* court held that attempted criminal threats was a crime and affirmed the lower court's judgment. (*Toledo*, *supra*, 26 Cal.4th at p. 235.) *Toledo* did not consider the exact issue raised here: whether a court had the obligation to sua sponte instruct on the lesser included offense of attempted criminal threats based on the evidence at trial. *Toledo*, however, did provide examples of what constitutes an attempted criminal threat. For example, "if a defendant, . . . acting with the requisite intent, makes a sufficient threat that is received and understood by the threatened person, but, for whatever reason, the threat does not *actually* cause the threatened person to be in sustained fear for his or her safety even though, under the circumstances, that person reasonably could have been placed in such fear . . . ." (*Id.* at p. 231.)

Defendant argues that there was substantial evidence that he did not commit criminal threats, but did attempt to commit criminal threats. Defendant claims that based on Louie's trial testimony, it is apparent that his threat to stab Louie did not cause Louie to be in sustained fear for his safety. Louie did not back up after defendant threatened him and continued to circle with defendant afterwards. And when defendant ran away after the threat was made, Louie followed him. Louie also testified that he heard defendant take something out of his pocket that sounded like keys. Louie did not actually see that defendant's keychain had a blade until after defendant was arrested.

In order for the trial court to have a sua sponte duty to instruct on the lesser included offense, there must be substantial evidence from which a reasonable jury could find that the defendant was guilty of committing the lesser offense but not the greater offense. (*Breverman*, *supra*, 19 Cal.4th at p. 162.) It is not enough that there is *some* evidence. Substantial evidence must be sufficient enough to merit consideration by the jury. (*Ibid.*)

We find that there is no substantial evidence that Louie was not in a state of sustained fear such that a reasonable jury could have convicted defendant of attempted

14

criminal threats, but not of criminal threats. Defendant's recitation of Louie's testimony does not provide a full account of the facts. Louie testified at trial that he continually kept his distance from defendant after defendant made the threat, because he was afraid of being stabbed. He also testified repeatedly that he felt afraid for his safety. This testimony distinguishes defendant's case from *Toledo*, where the wife testified that she did not feel afraid after her husband threatened her. (*Toledo*, *supra*, 26 Cal.4th at p. 235.) Louie also said that after the threat, he continued to follow defendant, but at a distance. He denied he was chasing defendant after the threat and explained that he was following defendant to keep an eye on him. After defendant made the threat, Louie testified that he changed his behavior and stopped chasing defendant, because defendant had said that he possessed a knife and Louie did not want to be stabbed. Louie admitted that he was unable to see the object in defendant's hands, and the object sounded like keys. However, he also stated that he thought the item could have been a knife based on defendant's statements.

Accordingly, the trial court did not err when it failed to instruct on the lesser included offense of attempted criminal threats.

c. **Prejudice**

Additionally, even if we assume that the trial court erred by failing to instruct on the lesser included offense, we will reverse the judgment only if it is reasonably probable the jury would have returned a different verdict absent the error. (*Breverman*, *supra*, 19 Cal.4th 142; *People v. Watson* (1956) 46 Cal.2d 818.)

We agree there was some evidence that may have indicated that Louie was not in sustained fear after the threat—such as the fact that he continued to circle with defendant and followed him after he made the threat—but, in comparison, the evidence of Louie's fear was relatively strong. Louie himself repeatedly testified that he was afraid for his safety after defendant's threat, and he followed defendant only at a distance afterwards.

15

(*Breverman*, *supra*, 19 Cal.4th at p. 177.)  Furthermore, Louie testified that he stopped chasing defendant and started following him after the threat, because he did not want to get stabbed.

Defendant argues it is clear that the jury was troubled with the charge of criminal threats, because during deliberations the jury asked for clarification of "sustained fear" and requested examples, if possible.  Later, the jury also informed the court that it could not agree on one of the counts and asked for advice on how to proceed.  Defendant interprets these circumstances as an indication that the jury was conflicted about whether defendant made criminal threats.  (*People v. Pearch* (1991) 229 Cal.App.3d 1282, 1295 ["Juror questions and requests to have testimony reread are indications the deliberations were close."].)  The jury's question about sustained fear, however, was vague and generic.  The question may have indicated the jury's difficulty during deliberations, or it could have indicated that the jury was unaware of where the definition was within the jury instructions.  After the court referred the jury to the definition of sustained fear in CALCRIM No. 1300, the jury did not ask any additional questions about sustained fear.  Additionally, the jury's second note, which indicated that it could not decide on one of the counts, did not state *which* count the jury had difficulty with.  Defendant only assumes that it was the criminal threats count.

Under these circumstances, any purported instructional error would have been harmless.

**DISPOSITION**

The judgment is affirmed.

16

_____
                    Premo, J.

WE CONCUR:



_____
        Rushing, P.J.




_____
        Grover, J.




People v. Charles
H041098