Filed 8/5/25  P. v. Rivera CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SEVION MICHAEL RIVERA,<br><br>    Defendant and Appellant. | A171301, A171328<br><br>(Humboldt County<br>Super. Ct. Nos. CR2202614,<br>CR2400480) |

A jury convicted defendant Sevion Michael Rivera of one count of first degree burglary (Pen. Code, § 459),[1] two counts of being a felon in possession of a firearm (§ 29800, subd. (a)(1)), and one count of being a felon in possession of ammunition (§ 30305, subd. (a)(1)).  He was sentenced to two years in state prison for the burglary, and concurrent 16-month terms for the remaining counts.  On appeal from that judgment,[2] defendant seeks reversal

---

[1]    Further undesignated statutory references are to the Penal Code.

[2]    That appeal is case no. A171328 (superior court case no. CR2400480). Defendant also filed a notice of appeal (no. A171301) from a sentence imposed in superior court case no. CR2202614 following the revocation of his probation based on his convictions in case no. CR2400480.  At defendant's request, we consolidated the appeals.  Defendant filed identical briefs in both appeals.  However, as the Attorney General notes, defendant's briefs do not raise any claims of error regarding the probation revocation and sentence

1

of only his burglary conviction, arguing: (1) the trial court incorrectly instructed the jury on the elements of burglary, and (2) he received inadequate notice of the prosecution's intention to rely on felony vandalism as a predicate offense of the burglary charge, thereby violating his constitutional rights. We affirm.

## BACKGROUND

### The Facts

The victim in this case, Quincy Hayden, was defendant's friend, had known him for about 10 years as of the time of trial, and thought of him "like [her] brother." In December 2023, she lived in a two-story duplex apartment in Eureka. Her roommate was her friend, Aiyana Risling. At that time, Risling was romantically involved with defendant, whom she had met years earlier through Hayden. Hayden and Risling had separate bedrooms. Defendant spent a lot of time at the apartment and slept over.

At some point, Risling communicated to Hayden her belief that defendant was being "unfaithful" to her, and Hayden agreed with Risling.

On the morning of December 18, 2023, Hayden woke up to hearing defendant and Risling arguing. Hayden went to check on Risling, knocked on her bedroom door, and opened it. Hayden and defendant then got into an

---

appealed from in appeal no. A171301. We therefore deem appeal no. A171301 abandoned and order it dismissed. (*In re Jerry M.* (1997) 59 Cal.App.4th 289, 293, fn. 3 [where two appeals—one from true findings and a wardship adjudication and the other from an order continuing wardship—were consolidated, but the appellant's briefs did not claim any errors concerning the latter appeal, the appellate court deemed that appeal to be abandoned and ordered it dismissed]; *People v. Hayes* (2006) 142 Cal.App.4th 175, 178, fn. 2 ["At appellant's request, we consolidated the appeals. In his brief, appellant does not claim any error concerning the probation revocation appeals. We therefore deem those appeals to have been abandoned and order that they be dismissed."].)

argument and "snapped at each other." Defendant, frustrated with Hayden, told her "it was [her] fault [he and Risling] were arguing and that [Hayden was] telling her lies" about him being unfaithful to Risling. The altercation, though brief, was "intense."

Several days later, on Friday, December 22, Hayden left town for the weekend. Before leaving, she locked her bedroom door.

The next morning, on December 23, Risling woke up with defendant next to her still asleep. When Risling got up to go to the bathroom, she saw Hayden's bedroom door open and "[s]ome things thrown around in her bedroom." Risling was concerned, so she woke up defendant and Facetimed Hayden. Risling told Hayden that someone had broken into their apartment and destroyed Hayden's room. Hayden "panicked" and left right away to go back to her apartment. Hayden's father and brother went separately to Hayden's apartment to meet her there.

After that call, Risling and defendant started getting ready to leave the apartment. According to Risling, she was planning to drop defendant off at a friend's house in Arcata, and then go to Redding to spend the holiday with her family. Defendant packed items into bags and loaded them into Risling's car before they drove off. When they reached Arcata, they called Hayden to "check[ ] in where she was at." Hayden asked Risling and defendant to "wait around until she got to town." Risling and defendant headed back to the apartment, with defendant driving Risling's car.

After Hayden, her father, and brother arrived at the apartment, they reported the incident to law enforcement. Deputy Hal Egset and Deputy Frank Rojas of the county sheriff's department arrived, and they all then went upstairs to Hayden's bedroom. Items were strewn about on her bedroom floor. There was damage to her bedroom: the doorjamb was cracked

3

open; there was a hole in the door, a hole in the wall, and another hole in the closet door; eyelash adhesive glue was "squirted all over the walls"; and "[t]here was stuff spilled on the carpet and on the walls." Hayden's TV had been knocked off an entertainment center to the ground, and was facing downward. Also, her mattress had been flipped over, and her laptop was shattered and looked like it had been stomped on.

Hayden informed Deputy Egset that numerous items of hers were missing, including her green Xbox console that had a gold Michael Jordan sticker on it, Xbox controllers, a silver money clip, and several other items.

Risling and defendant arrived at the apartment to find Hayden, her brother, her father, and the deputies there. Deputy Egset testified he interviewed Risling, who told him that around 4:00 that morning she and defendant "heard some noise downstairs" and that defendant had told her "there was a screen that was off of one of the lower story windows."

Risling, however, testified she did not hear any noises and did not wake up during the night. She and defendant left the apartment around 9:30 p.m. to go to a friend's place where they drank, and returned to the apartment around 12:30 a.m. Risling testified she was "drunk" and that she and defendant went to sleep when they returned to the apartment.

Meanwhile, Deputy Rojas searched Risling's vehicle. He found Hayden's Xbox with the gold Michael Jordan sticker, the silver money clip, and other items Hayden identified as taken from her room.

Deputy Rojas also found a black Nike bag on the rear passenger floorboard in Risling's car. Inside the bag was an unregistered Sig Sauer loaded firearm and additional live rounds of ammunition for a 40-caliber firearm and a shotgun. Risling said the bag belonged to defendant. A loaded black Mossberg 500 shotgun and backpack with a firearm holster were also

4

found in the trunk.

**The Proceedings Below**

On May 3, 2024, following a preliminary hearing, the district attorney filed in case no. CR2400480 an information charging defendant with first degree residential burglary (§ 459; count 1); being a felon in possession of a firearm (a handgun) (§ 29800, subd. (a)(1); count 2); being a felon in possession of a firearm (a shotgun) (§ 29800, subd. (a)(1); count 3); and being a felon in possession of ammunition (§ 30305, subd. (a)(1); count 4).

On July 12, the jury found defendant guilty of all counts charged.

On August 8, the trial court sentenced defendant to the low term of two years for the burglary and concurrent 16-month terms for each of the remaining three counts.

Defendant appealed the judgment of conviction.

## DISCUSSION

**Burglary Instructions**

Defendant's first argument is that the trial court incorrectly instructed the jury on the specific intent of burglary, in violation of his rights under the Sixth and Fourteenth Amendments to the federal Constitution. We conclude that the parties' closing arguments resolved the instructions' ambiguity such that it is not reasonably likely the jury misunderstood the relevant legal principles.

### *Additional Background*

Burglary is committed when a person enters a dwelling, or a room within a dwelling, with the intent to commit a theft or any felony. (§ 459; *People v. Montoya* (1994) 7 Cal.4th 1027, 1041 & fn. 8.)

In this case, the People sought to prove that defendant committed a burglary by entering into the victim's bedroom with the intent to commit: (1)

5

a theft (§ 484); or (2) felony vandalism (§ 594, subds. (a), (b)(1)).  To that end, the People requested that the court instruct the jury using their modified versions of the pattern instructions on burglary (CALCRIM No. 1700), theft (CALCRIM No. 1800), and felony vandalism (CALCRIM No. 2900).

The People's proposed instruction on burglary stated:

"The defendant is charged in Count One with a violation of Penal Code Section 459.

"To prove that the defendant is guilty of this crime, the People must prove that:

"1.    The defendant entered a room within a building;  [¶] AND [¶]

"2.    When the defendant entered a room within a building, he intended to commit theft or felony vandalism.

"To decide whether the defendant intended to commit theft or felony vandalism, please refer to the separate instructions that I will give you on those crimes.

"A burglary was committed if the defendant entered with the intent to commit theft or felony vandalism.  The defendant does not need to have actually committed theft or felony vandalism as long as he entered with the intent to do so.

"The People allege that the defendant intended to commit theft or felony vandalism.  You may not find the defendant guilty of burglary unless you agree that he intended to commit one of those crimes at the time of entry. You do not all have to agree on which one of those crimes he intended."

The People's proposed instruction on theft stated in pertinent part:

"The defendant is charged in Count One with burglary.  In order to find defendant guilt [*sic*] of burglary, the People must prove that the defendant entered Ms. Hayden's room with the intent to commit theft or felony

6

vandalism.

*"To prove that the defendant entered Ms. Hayden's room with the intent to commit theft, the People must prove that*:

*"1. The defendant took possession of property owned by someone else;*

*"2. The defendant took the property without the owner's consent;*

*"3. When the defendant took the property, he intended to deprive Ms. Hayden of it permanently; [¶] AND*

*"4. The defendant moved the property, even a small distance, and kept it for any period of time, however brief."* (Italics added.)

Similarly, the People's proposed instruction on felony vandalism stated in relevant part:

"The defendant is charged in Count One with burglary. In order to find the defendant guilty of burglary, the People must prove that the defendant entered Ms. Hayden's room with the intent to commit theft or felony vandalism.

*"To prove that the defendant entered Ms. Hayden's room with the intent to commit felony vandalism, the People must prove that*:

*"1. The defendant maliciously damaged or destroyed real or personal property;*

*"2. The defendant did not own the property; [¶] AND [¶]*

*"3. The amount of damage caused by the vandalism was $400 or more*.

"Someone acts maliciously when he or she intentionally does a wrongful act or when he or she acts with the unlawful intent to annoy or injure someone else." (Original italics omitted, italics added.)

During a conference on jury instructions at trial, defense counsel objected to the italicized language in the instruction on theft. Counsel

7

argued: "in the second paragraph . . . it should read something to the effect of to prove the defendant entered Ms. Hayden's room with the intent to commit theft. The People must prove the defendant intended to, and then the bullet points. Because the People have to show the intent going into the room, not just that he did the acts that he's accused of." Counsel continued, "[T]he jury instruction as written is saying in order to prove the intent, you just have to show that he did it. When, in fact, the jury instruction should be he entered with the intent, that at the time of entering, he intended to take possession of the property owned by somebody else, took property without the owner's consent and intended to deprive the owner permanently. But that was the intent when he entered the room."

Defense counsel made the same objections to the People's proposed instruction on felony vandalism to the extent it contained similar language.

The court invited defense counsel to submit his version of the instructions and stated it would choose between his and the prosecution's. The record does not show that the defense submitted such instructions.

Ultimately, the court gave the People's versions of the instructions on burglary, theft, and felony vandalism as recited above.

### *Applicable Law*

"A court is required to instruct the jury on the points of law applicable to the case, and no particular form is required as long as the instructions are complete and correctly state the law." (*People v. Andrade* (2000) 85 Cal.App.4th 579, 585.) Where, as here, " 'a defendant is charged with burglary, the trial court, on its own initiative, must give instructions to the jury identifying and defining the target offense(s) that the defendant allegedly intended to commit upon entry into the building [or dwelling].' " (*People v. Hughes* (2002) 27 Cal.4th 287, 349, original italics omitted.)

"A jury misinstruction that relieves the prosecution of its burden to prove an element of the crime—by either misdescribing the element or omitting it entirely—violates [the federal Constitution]." (*People v. Hendrix* (2022) 13 Cal.5th 933, 942, citing *United States v. Gaudin* (1995) 515 U.S. 506, 509–510 [the due process clause of the Fifth Amendment and the Sixth Amendment right to a speedy trial by an impartial jury "require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt"], fn. omitted.)

"In considering a claim of instructional error we must first ascertain what the relevant law provides, and then determine what meaning the instruction given conveys." (*People v. Andrade, supra,* 85 Cal.App.4th at p. 585.) We review the wording of jury instructions de novo. (*People v. Posey* (2004) 32 Cal.4th 193, 218.)

" 'A defendant challenging an instruction as being subject to erroneous interpretation by the jury must demonstrate a reasonable likelihood that the jury understood the instruction in the way asserted by the defendant.' " (*People v. Solomon* (2010) 49 Cal.4th 792, 822; see *People v. Smithey* (1999) 20 Cal.4th 936, 963 ["If a jury instruction is ambiguous, we inquire whether there is a reasonable likelihood that the jury misunderstood and misapplied the instruction"].) " '[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction.' " (*People v. Carrington* (2009) 47 Cal.4th 145, 192.) " 'Instructions should be interpreted . . . to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation.' " (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.) We presume jurors are intelligent and capable of understanding and applying the

instructions they are given. (*People v. Lewis* (2001) 26 Cal.4th 334, 390.) We "also must consider the arguments of counsel in assessing the probable impact of the instruction." (*People v. Young* (2005) 34 Cal.4th 1149, 1202 (*Young*).)

### *Analysis*

As he did below, defendant challenges the portions of the instructions given to the jury defining theft and felony vandalism, the target offenses of the burglary charge in this case. The assertedly problematic language, as noted above, was the following: "To prove that the defendant entered Ms. Hayden's room with the intent to commit [theft or felony vandalism], the People must prove that[,]" followed by a list of the elements of theft or felony vandalism. Defendant argues that these instructions improperly "suggest[ed] the requisite intent at the time of entry could be proved by the commission of the intended crime[s]," without necessarily finding that he had the intent to commit those crimes *at the time he entered Hayden's bedroom*. These instructions, defendant argues, had the effect of lightening the prosecution's burden of proof with respect to the mens rea required for burglary, in violation of his constitutional rights to have a jury make a finding on the elements of the charged offense.

As a preliminary matter, although defendant objected to the prosecution's proposed instructions above, the record does not show that he submitted his own version of the instructions as requested by the trial court. Assuming defendant preserved his instructional error claim despite not submitting his version of the instructions, we would reject the claim on the merits.

Viewed in isolation, one could construe the above quoted language in the theft and vandalism instructions as defendant does—that is, as telling

10

the jury it could find defendant had the specific intent to commit burglary if he intended to commit the target offenses, without necessarily having to find that he had the intent to commit the target offenses at the time of entry. Interpreted in this manner, these instructions conflict with the other, correct instructions, which stated (five separate times) that in order to convict defendant of burglary, the People had to prove both that (1) defendant entered the victim's bedroom and (2) at the time of entry, he intended to commit theft or felony vandalism.

To the extent the instructions on theft and vandalism created some ambiguity on the requisite intent for burglary, defendant must demonstrate "whether it is reasonably likely the jury misunderstood and misapplied the instruction." (*People v. Smithey*, *supra*, 20 Cal.4th at p. 963; see *People v. Solomon*, *supra*, 49 Cal.4th at p. 822.) Based on the record as a whole—and counsel's arguments in particular—we conclude that defendant's interpretation is not reasonably likely. (See *People v. Carrington*, *supra*, 47 Cal.4th at p. 192 [alleged ambiguity in instructions must be viewed in light of the instructions as a whole and the entire record]; *Young*, *supra*, 34 Cal.4th at p. 1202 ["The reviewing court also must consider the arguments of counsel in assessing the probable impact of the instruction on the jury."].)

Any possibility of confusion about the requisite intent for burglary was diminished by the parties' closing arguments. The prosecutor began her argument by stating, "The evidence that has been presented has proven beyond a reasonable doubt that the defendant broke his way into Ms. Hayden's locked bedroom with the intent to not only destroy her room but also with the intent to steal." The prosecutor argued that defendant "had a score to settle" due to his belief that Hayden was interfering with his relationship with Risling. Then, addressing the burglary instructions

11

specifically, the prosecutor stated: "So for you to find the defendant guilty of burglary, I have to prove beyond a reasonable doubt three main things: One, that the defendant entered; two, Ms. Hayden's locked bedroom; and three, with the intent to steal or commit felony vandalism." As to vandalism, the prosecutor argued, "The People just need to prove that the defendant entered that bedroom with the intent to commit damage—$400 worth of damage." As to theft, the prosecutor argued that defendant "entered that bedroom with the intent to steal . . . ."

Similarly, in his closing statement, defense counsel argued, "To get to first-degree burglary, the People have to show beyond a reasonable doubt that the defendant entered the room. . . . [The] People have to show beyond a reasonable doubt when defendant entered the room, defendant intended to commit theft or a felony vandalism, one of those things."

Taken as a whole, the arguments of both counsel cleared up the ambiguity in the instructions regarding the requisite intent of burglary, as they repeated to the jury that in order to convict defendant of guilty, it had to find he entered the victim's bedroom with the intent to commit theft or felony vandalism.

Moreover, we note that the "record contains no inquiries from the jury regarding the application of these instructions." (*Young, supra,* 34 Cal.4th at p. 1203.) Indeed, there is no indication the jury struggled with its verdict at all—the record indicates that the jury deliberated and reached its verdict in the same afternoon.

In sum, we conclude it is not reasonably likely the jury misunderstood the requisite intent of burglary and, as such, the court did not commit instructional error.

**Notice of the Prosecution's Reliance on Felony Vandalism as a Predicate Offense for Burglary**

Defendant's second argument is that he was denied his constitutional rights to a fair trial and due process because he was not given notice of the prosecution's intention to rely on felony vandalism as a predicate for the burglary charge. We disagree.

*Additional Background*

On July 11, 2024, the day after Hayden, Risling, and Deputy Egset testified at trial for the prosecution, and the day before closing argument, the parties had a conference on jury instructions. They discussed the People's request for an instruction advising the jury that burglary could be based on entry with intent to commit theft or felony vandalism. Defense counsel "object[ed] to the felony vandalism part of [the instruction]," stating, "We've had no indication of the value of the damage done, and I have gotten no discovery whatsoever concerning that." Counsel argued, "I think that at this stage of the game, going over jury instructions, the People presenting that as a theory of the case it wasn't [*sic*] even in the prelim."

The prosecutor noted that defense counsel was "the one who presented photographs first of the damage done to the bedroom." The prosecutor then argued, "we have that the door was busted. We have that the frame of the door was cracked. We have that there was writing on the wall. We have two holes in the wall. We have a stomped-on computer. We have a TV that was turned on its face. . . . If the value is what we are discussing, I think that a jury can reasonably conclude that the value of the destruction done in that bedroom was very great, more than $400." The prosecutor added that the People intended to call Deputy Rojas as the next witness and question him on the approximate amount of damages.

The court noted that the evidence "as far as [it has] been able to discern

13

right now" is that the damages to the victim's bedroom "are going to be substantial amounts" and "over $400 for the door frame and the holes in the wall alone." The court stated, "[the prosecution] came in with photographs showing significant—and I'll use the word, vandalism—to that room. And so if they have a witness who paid money and who is under oath and says this is how much the damage was, then it's either over four or under four. And you'll have an opportunity to cross-examine that. So that's where we'll leave it."

Over defense counsel's objection, the court gave the jury the burglary instructions that included felony vandalism as a target offense.

### *Applicable Law*

"Both the Sixth Amendment of the federal Constitution and the due process guarantees of the state and federal Constitutions require that a criminal defendant receive notice of the charges adequate to give a meaningful opportunity to defend against them." (*People v. Seaton* (2001) 26 Cal.4th 598, 640.) "Under modern pleading procedures, notice of the particular circumstances of an alleged crime is provided . . . not by a factually detailed information." (*People v. Jennings* (1991) 53 Cal.3d 334, 358.) Rather, notice is adequate if the factual basis of the theory was presented at the preliminary hearing. (*People v. Jenkins* (2000) 22 Cal.4th 900, 1024; *People v. Quiroz* (2013) 215 Cal.App.4th 65, 70 (*Quiroz*).) Notice is also satisfied "by the People's express mention of that theory before or during trial sufficiently in advance of closing argument." (*Quiroz, supra*, 215 Cal.App.4th at pp. 70–71, citing *People v. Crawford* (1990) 224 Cal.App.3d 1, 8–9 [initial, pretrial instructional conference], *People v. Lucas* (1997) 55 Cal.App.4th 721, 738 [same], and *Stephens v. Borg* (9th Cir. 1995) 59 F.3d 932, 936 [five days prior to closing argument]; see also *People v. Gurule* (2002) 28 Cal.4th 557,

14

630 ["assuming defendant first learned of the lying-in-wait theory when the parties were discussing appropriate instructions, it was not at that time too late to move to reopen the proceedings to allow the defense to produce evidence addressing the theory. [Citation.] Defendant, then, had sufficient time to confront the facts that allegedly supported the theory, eliminating the possibility that any lack of notice was fatally unconstitutional."].) "What due process will not tolerate is the People affirmatively misleading or ambushing the defense with its theory." (*Quiroz*, at p. 71.)

"Whether defendant received constitutionally adequate notice that the prosecution was relying on a particular theory of guilt entails a resolution of a mixed question of law and fact that we believe is predominantly legal. As such, we undertake an independent review." (*People v. Cole* (2004) 33 Cal.4th 1158, 1205.)

### *Analysis*

Defendant contends he received inadequate notice of the prosecution's intent to rely on felony vandalism as a predicate offense of burglary. He claims that he "did not discover this new theory . . . until after the testimony of both the victim and her roommate, well into the trial, during the discussion of the jury instructions." Accordingly, he claims he was denied his rights to a fair trial and due process under the federal and state Constitutions. We are unpersuaded.

Felony vandalism is committed if: (1) the defendant defaces with graffiti, damages, or destroys real or personal property; (2) the defendant does not own the property; and (3) the amount of damages is $400 or more. (§ 594, subds. (a), (b)(1); CALCRIM No. 2900.)[3]

---

[3]     Damage of less than $400 is punishable solely as a misdemeanor. (§ 594, subd. (b)(2).)

As we understand it, the crux of defendant's objection below and his claim on appeal is that he had no notice the prosecution might rely on felony vandalism as a predicate for burglary, because there was no evidence from the preliminary hearing regarding the third element—that the damages done to Hayden's bedroom and property met the felony vandalism threshold of $400. As he puts it in his reply brief, not all the elements of felony vandalism could be "gleaned from the preliminary hearing testimony."

Initially, we note that in asserting the lack of evidence as to the amount of damages, defendant does not appear to dispute there was evidence presented at the preliminary hearing as to the other elements of felony vandalism. Nor could he reasonably do so. The testimony, which included that of Deputy Egset's, put defendant on notice that the prosecution intended to show that defendant entered Hayden's locked bedroom with the intent to damage or destroy her bedroom and personal property. Deputy Egset testified he was told by Hayden that days before the incident, defendant became upset with her, and the two got into argument when defendant accused her of interfering with his and Risling's relationship. On the morning after the incident, Hayden told Deputy Egset that her bedroom had been broken into and "ransacked" and that several of her possessions were missing. Deputy Egset then testified as to the damages he observed: "[t]he doorjamb was cracked from forced entry. The lock mechanism was kind of bent and, also, I believe that one of the hinges were almost off one side of the door. As we entered, there was items strewn about, there was a hole in the wall, her TV was thrown down on the ground and there was some type of writing on the wall that was illegible." In addition, Hayden's laptop was damaged. Upon investigation, the deputies found Hayden's missing items in defendant's backpack.

16

It is true, as defendant asserts, there was no testimony at the preliminary hearing that specified the amount of damages to Hayden's bedroom and possessions caused by the vandalism. Assuming arguendo for that reason defendant could not determine from the preliminary hearing transcript by itself that the People might rely on felony vandalism as a predicate offense, we agree with the Attorney General that the requisite notice was provided by other sources.

One of those sources is, as the Attorney General notes, and defendant does not refute in his reply brief, the People's trial memorandum filed at the start of trial. The memorandum was accompanied by a list of the People's requested "CALCRIM instructions," two of those of which addressed felony vandalism. (CALCRIM Nos. 2900, 2901.) The memorandum also included the People's statement of the case: "On or about December 23, 2023, Defendant broke the door to his girlfriend's roommate's locked bedroom, and stole the victims [*sic*] green X-box while trashing her room, including writing on the wall, punching a hole in the drywall, breaking the door frame, and punching a hole through the door." Additionally, as the Attorney General asserts, the evidence presented at trial, which included photographs of the damages to Hayden's bedroom and personal property, was consistent with that theory.

Accordingly, we reject defendant's claim that he was "unfairly surpris[ed]" by the People's intention to rely on felony vandalism as a target offense of the burglary charge. Contrary to defendant's assertion, the record demonstrates he received constitutionally adequate notice of that theory.

But even if we were persuaded defendant received late notice of that theory, any such error was harmless beyond a reasonable doubt. "[I]n cases where a new theory is introduced late in the game for reasons other than

17

prosecutorial gamesmanship, courts have employed a harmless error test. That test looks to whether the late notice 'unfairly prevented [defense counsel] from arguing his or her defense to the jury or . . . substantially misled [counsel] in formulating and presenting arguments.' " (*Quiroz, supra,* 215 Cal.App.4th at p. 71.) In *Quiroz,* the appellate court held that any late notice the defendant received of the People's aiding and abetting theory was harmless because the defendant "had ample time to call witnesses and tailor his closing argument after the People reaffirmed their request for an aiding and abetting instruction. Indeed, [he] capitalized on the People's midtrial shift in emphasis during closing argument." (*Ibid.*)

Here, the record does not reflect any intent by the People to ambush or mislead the defendant, and so, we look to whether the asserted error was harmless. Even accepting defendant's assertion he had no notice of the felony vandalism theory until the jury instruction conference, he nonetheless had ample time to confront the facts in support of that theory and to formulate and present arguments in response to that theory.

The conference on jury instructions took place after Hayden, Risling, or Deputy Egset had testified, but while the People were still presenting their case at trial. During that conference, the prosecutor informed the court and the defense that the People's next witness (Deputy Rojas) would testify on the approximate amount of damages caused by the vandalism. Thus, as the court noted, defendant had an opportunity to cross-examine that witness on that issue. Further, if defendant needed Hayden, Risling, or Deputy Egset to answer more questions about the damages, the defense could have requested to have any such witnesses testify further. Additionally, if the defense needed additional time, such as for the purpose of producing evidence addressing the issue, it could have also requested a short continuance. (See

18

*People v. Murtishaw* (1981) 29 Cal.3d 733, 751, fn. 11 [where defendant failed to request a continuance to prepare a defense against a theory he arguably learned late at trial, the People's "failure to give defendant earlier notice of this theory did not impair the presentation of defendant's defense"], overruled on another ground in *People v. Boyd* (1985) 38 Cal.3d 762, 772–773.) Moreover, even after the close of evidence, defendant "could have moved to reopen the taking of evidence so as to present a defense against [the theory]." (See *People v. Memro* (1995) 11 Cal.4th 786, 869, overruled on another ground in *People v. Gaines* (2009) 46 Cal.4th 172, 181, fn. 2.) However, instead of doing any of these things, the defense proceeded to closing arguments, which, we note, included arguments that the People failed to prove that defendant had entered Hayden's bedroom with the intent to commit felony vandalism.

Given these circumstances, we conclude any late notice of the prosecution's theory of burglary predicated on felony vandalism did not " 'unfairly prevent[ ] [defense counsel] from arguing his . . . defense to the jury or . . . substantially misle[a]d [counsel] in formulating and presenting arguments.' " (*Quiroz, supra*, 215 Cal.App.4th at p. 71.) In sum, any late notice was harmless beyond a reasonable doubt. (*Ibid.*)

## DISPOSITION

In appeal case no. A171328, the judgment is affirmed. The appeal in case no. A171301 is dismissed.

_____

RICHMAN, ACTING P. J.

We concur.

_____

MILLER, J.

_____

DESAUTELS, J.

(A171301N, A171328N)